### STATE OF IOWA v. J. WILSON, Appellant.

**Larceny:** CANCELED RAILROAD TICKETS.  Coupon tickets and local
1  tickets taken up by the conductor may be the subjects of larceny.
Code, 3902.

**PRESUMPTION FROM RECENT POSSESSION.**  When all the property
3  taken was in a valise, which was also stolen, it is proper to charge
that finding part of the property on the defendant raised the
presumption that he stole it all.

**Instruction:** EQUIVALENT.  A charge that possession does not raise
3  a presumption of guilt where explanation of it raises a reasonable
doubt of dishonesty submits the defense that the defendant
bought the stolen property.

**SAME.**  It is not prejudicial to submit the question whether stolen
2  property was a contract, voucher or receipt without defining
"receipt" as used in the statute.

*Appeal from Des Moines District Court.*—HON. JAMES
D. SMYTHE, Judge.

### TUESDAY, OCTOBER 1, 1895.

Defendant was indicted, tried, and convicted of
the crime of larceny from a building in the night time.
He was sentenced to imprisonment in the state peni-
tentiary for the term of three years, and appeals.—
*Affirmed.*

*W. W. Dodge* for appellant.

*Milton Remley,* attorney general, and *Geo. S. Tracy*
for the state.

Deemer, J.—The indictment accuses the defendant
of stealing the following described property, to-wit:
"One satchel, $10.00; one revolver and holder, $13.00;
railroad maps, $1.00; eyeglasses, $2.50; monkey wrench,
40 cents; stockings, 60 cents; one hat, $1.00; one pen
and holder, 10 cents; and railroad tickets, $100.00,—

the more particular description and number of which
is to the grand jury unknown.    Said tickets being
instruments whereby an obligation is created, and
upon which the value might be collected; and the said
tickets were receipts to said J. J. Budd.    The aforesaid
property being of the separate value aforesaid, and of
the aggregate value of $128.60."    It appears from the
testimony that the J. J. Budd named in the indictment
is a conductor on the Chicago, Burlington & Quincy
Railroad; that on the evening of the eleventh day of
July, 1894, he left his valise, containing the property
described in the indictment,—other than the satchel,—
upon a seat in the ladies' waiting room in the railway
depot at the city of Burlington while he went to the
baggage room.    Upon his return in a few minutes he
discovered that the valise, with its contents, had been
stolen.    The defendant had been seen around the depot
in the evening, and on the thirteenth day of July was
arrested with the stolen revolver, wrench, penholder,
stockings, and maps in his possession.    The property
so found was not worth to exceed sixteen dollars and
sixty cents.    Defendant was found guilty of the crime
for which he was indicted as above stated, and the jury
found the value of the property taken to be twenty-
three dollars and forty-five cents.

I.    Appellant's first contention is that the court
erred in admitting testimony as to the theft of the rail-
way tickets, and in instructing that they can be the
subject of larceny.    Turning to the record, we discover
that the instruction complained of, which is numbered
six, was given at the request of defendant, and he is in
no position to complain of it.    No objections were made
as to the "coupon" and other ticket; and to the question
calling for the value of the tickets when stolen the
defendant objected, after the answers were given, as
follows:    "Objected to.    Overruled, and exception."
It is apparent that no question is as yet presented for

our consideration. We find, in addition, the following record: "The defendant moves to strike from the record all the testimony of the witness Budd relating to the stealing of the tickets, as described in the indict-ment, for the reason that the evidence is incompetent and improper, and for the further fact that the tickets have been shown to have had no value, and were worth-less, except for the value of the paper on which they were printed at the time they were stolen. Motion ruled upon by the court in instructions to the jury." Here there is no ruling except as appears in the instruc-tions, and the instruction with reference to this subject was given at defendant's request. It is insisted, however, that railway tickets, after they have been taken up and punched by the conductor, are not covered by our statutes with reference to lar-ceny. The provisions of our Code, so far as material, are as follows:

"Sec. 3902. If any person steal, take and carry away of the property of another, * * * any contract in force, * * * or any receipt, release or defeasance, or any instrument or writing whereby any demand, right or obligation is created, increased, extinguished, or diminished, he is guilty of larceny."

"Sec. 3914. If the property stolen consist of any bank note, bond, bill, covenant, bill of exchange, draft, order or receipt or any evidence of debt whatever, * * * or any instrument whereby any demand, right or obligation may be assigned, transferred, created, increased, released, extinguished or dimin-ished, the money due thereon or secured thereby, and remaining unsatisfied, or which in any event or contin-gency might be collected thereon, or the value of the property transferred or affected as the case may be, shall be adjudged the value of the thing stolen."

The evidence shows that the railroad tickets referred to in the indictment were of two kinds, to-wit,

"local" and "coupon." The local tickets were sold by the agents of the Chicago, Burlington & Quincy Railroad, good between points on its own line; and the coupon tickets were sold by some other road, for through transportation from some point off the line to some point either on or beyond the line of the Chicago, Burlington & Quincy Railroad. The company selling these coupon tickets collected full fare, and became responsible to the Chicago, Burlington & Quincy Company for its proportion of the charge. The testimony further shows that the coupons torn off by the conductor of the Chicago, Burlington & Quincy Company were of value to the company, both as a receipt and as evidence of a debt due it from the line selling the ticket; that "this coupon goes to the general office, so that they can call on the other roads for transportation." It is also shown that all tickets, whether "local" or "coupon," are receipts to the conductor, and are worth to him what the fare would be between the stations covered by them. We think that these tickets were not only receipts, but that they, or at least the coupons, were "instruments or writings whereby a demand or right is created" within the meaning of the statute before quoted, and were "also instruments by which a right or obligation was extinguished." 2 Bish. Cr. Law, section 785; *Millner v. State,* 15 Lea, 179. The cases of *McCarty v. State,* 25 Pac. Rep. (Wash.) 299, and *State v. Musgang,* 53 N. W. Rep. (Minn.) 874, are not in point.

II. The sixth instruction given at the request of the defendant is as follows: "(6) It appears from the evidence that certain of the property alleged to have been stolen from the prosecuting witness consisted of certain railroad tickets, and as to such of said tickets as were described in the testimony of the prosecuting witness as 'local tickets,' issued by the offices of the Chicago, Burlington & Quincy Railroad Company, the court instructs you that the same, appearing to have

been canceled, and to have been of no value as contracts, vouchers, or receipts, were not, under the law, subjects of larceny, and cannot be considered by the jury as of any value, except such nominal value as they may have had as waste paper. But as to such of said tickets as have been referred to in the evidence as 'coupon tickets,' issued by others than the said Chicago, Burlington & Quincy Railroad Company, if you find from the evidence beyond a reasonable doubt that the same was of certain fixed value to the said railroad company as vouchers, contracts, or receipts, upon which they were able to collect certain fixed sums, constituting the face value thereof, of the corporations or persons issuing the same, it will then be proper for you to find that the said tickets were subjects of larceny, and of the face value provided by their terms, and, if stolen by the defendant, he would be accountable for the same at such value as shown by the evidence." This seems to be the only one given with reference to the tickets, and it is insisted that the court erred in not defining the word "receipt" as it appears in the statute.

It seems from this instruction that the court did not regard any of these local tickets as receipts, and that he submitted to the jury the question as to whether the coupon tickets were vouchers, contracts, or receipts upon which the railroad company was able to collect certain sums of money, and made the answer turn upon the question as to their value to the railroad company. The jury was very clearly told that, unless they had such value, they were not the subjects of larceny. The instruction, for the reasons before stated, was favorable to defendant, and he cannot complain of the failure to instruct as to what constituted a receipt.

III. The fourth instruction is as follows: "Under the law, the unexplained possession of stolen property immediately after the same has been stolen creates the presumption that the person having such possession is

the thief; but this presumption is one which may be rebutted by other evidence affording an explanation of such possession, or raising a reasonable doubt as to the guilt of the party having the same. And if, in this case, the jury find from the evidence, beyond a reasonable doubt, that all of the property of the said prosecuting witness, described in the indictment, was, during the evening or night of the day named in the indictment, abstracted and stolen from within the building named in the indictment, by one and the same person, and that on the next day, or within a few hours thereafter, the defendant was found in the possession of the said property, or a considerable part of the same, the jury would then be warranted in concluding that the property in question was stolen by the defendant from the said building, unless the explanation given by the defendant of his possession of the property found with him, either alone or in connection with the other facts and circumstances disclosed by the evidence, raises in your minds a reasonable doubt as to the honesty of the defendant's possession of the said property. But if the explanation offered by the defendant in his testimony, or the facts and circumstances proven in the case, create in the minds of the jury a reasonable doubt as to the guilty possession of the defendant, you should acquit him." Several complaints are lodged against it.

First it is said that, as defendant claimed to have purchased the property found in his possession from a stranger, his defense was not submitted. We think the instruction fairly presents the question as to his having come into the possession of the property honestly, and that it accords with a long line of cases decided by this court. It is also insisted, secondly, that it is erroneous, because it holds that if defendant was, within a few hours after the larceny was committed, found in possession of part of the stolen property, the presumption would arise that he stole all described in the indict-

ment; and the cases of *State v. Scott,* 19 S. W. Rep. (Mo. Sup.) 89, and *State v. Owsley,* 20 S. W. Rep. (Mo. Sup.) 194, are relied upon for a reversal. These cases were each burglary cases, and the facts are very different from those appearing in the case at bar. And while it may not be true, as a general rule, that recent possession of a part of property stolen is *prima facie* evidence that the possessor stole the whole of it, yet we think that the instruction, as applied to the facts in this case, was correct. The property, when taken, was all in the conductor's valise, and of necessity was all taken at the same time, and by the same person. It follows, then, as a natural sequence, that if defendant stole any of the property he stole it all. It would be absolutely impossible, in view of the testimony adduced, for him to have taken a part without taking it all. See *Com. v. Millard,* 1 Mass. 6; *State v. Barker,* 64 Mo. 282; *State v. Owens,* 79 Mo. 619. There was no error, then, in the instruction.

IV. Complaint is made of the finding of the jury as to the value of the property stolen. This complaint is groundless.

V. Some other questions are made in argument, all of which we have examined, but, finding them unimportant, we will not do more than say there is no error. We have examined the whole record with care, and see no reason for disturbing the judgment.—*Affirmed.*