### KEMPE v. UNITED STATES.

No. 13076.

Circuit Court of Appeals, Eighth Circuit.

Oct. 27, 1945.

Rehearing Denied Dec. 10, 1945.

See also 59 F.Supp. 905.

Carlos W. Goltz, of Sioux City, Iowa, for appellant.

Tobias E. Diamond, U. S. Atty., of Sioux City, Iowa, for appellee.

Before GARDNER and THOMAS, Circuit Judges, and MILLER, District Judge.

MILLER, District Judge.

By information containing eight counts, the appellant, hereinafter called defendant, was charged in counts I, III, V and VII with violating on a specific date named in each count, Ration Order No. 5C (7 Federal Register 9135), as amended, being a regulation issued and promulgated under the Second War Powers Act of 1942, Sections 631 to 645a, both inclusive, of Title 50 U.S.C.A.Appendix, as amended.

In counts II, IV, VI and VIII defendant was charged with violating, on a specific date named in each count, Maximum Price Regulation 88(9 Federal Register 1783), being a regulation issued and promulgated under the Emergency Price Control Act of 1942, Sections 901 to 946, both inclusive, of Title 50 U.S.C.A.Appendix, as amended.

By jury verdict the defendant was acquitted on all counts except III and IV. He was sentenced to imprisonment for one year upon the verdict of guilty on each of the counts III and IV, the sentence upon count IV to run concurrently with the sentence upon count III and, also, was adjudged to pay the costs.

By this appeal the defendant challenges the judgment and seeks a reversal on the grounds that the court erred in refusing: (1) to sustain the motion to quash the information; (2) to sustain the demurrer to the information; (3) to sustain the motion for a bill of particulars; (4) to withdraw from consideration by the jury counts III and IV of the information; (5) and erred in the admission of testimony of certain witnesses over the objection of defendant.

Preliminary to the consideration of these contentions the allegations of counts III and IV should be examined along with the applicable regulations and statutory enactments alleged to have been violated.

In count III it was charged that the defendant on the 4th day of October 1944, in Sioux City, Iowa, was engaged and employed in the trade and business of selling and delivering gasoline in tank wagons to persons for resale at retail establishments and that the defendant knowingly, wilfully and unlawfully sold, transferred and delivered to C. T. Studley, who was engaged in the business of reselling gasoline at a retail establishment in Sioux City, Iowa, 500 gallons of gasoline without receiving, or in exchange for, at the time of the delivery of the gasoline or within five days thereafter, a quantity of coupons or other evidences equal in gallonage to the 500 gallons of gasoline so delivered, in violation of Ration Order No. 5C (7 Federal Register 9135) being a regulation made under the Second War Powers Act of 1942, Sections 631 to 645a, both inclusive, Title 50 U.S.C.A.Appendix, as amended.

Statutory authority for the rationing of gasoline is found in Title III of the Second War Powers Act of 1942, as amended. Subsection 2(a) (2) of § 633, 50 U.S.C.A. Appendix.

The applicable provisions of the Act were extended to December 31, 1945, by Public Law 509 of the 78th Congress. Chapter 614, Second Session, 50 U.S.C.A.Appendix, § 645. In subsection 2(a) (5) of § 633, 50 U.S.C.A.Appendix, it is provided: "Any person who willfully performs any act prohibited, or willfully fails to perform any act required by, any provision of this subsection (a) or any rule, regulation, or order thereunder, whether heretofore or hereafter issued, shall be guilty of a misdemeanor, and shall, upon conviction, be fined not more than $10,000 or imprisoned for not more than one year, or both."

Ration Order No. 5C (7 Federal Register 9135) was issued under the Act and prohibits a dealer in gasoline from transferring or selling gasoline without receiving ration coupons in equal gallonage value to the gasoline so transferred or delivered.

In count IV of the information it was charged that the defendant on the 4th day of October, 1944, in Sioux City, Iowa, was engaged in the business of selling and delivering gasoline in tank wagons to persons for resale by retail and that the defendant knowingly, wilfully and unlawfully sold and delivered by tank wagon to C. T. Studley, who was then engaged in the business of reselling gasoline at retail in Sioux City, Iowa, 500 gallons of premium motor gasoline at a price of 19½ cents per gallon, which said price as the defendant then well knew was higher than the lawful maximum tank wagon price of 16.1 cents per gallon, prescribed and established by Section 7.4 of Maximum Price Regulation No. 88 (9 Federal Register 1783), in violation of the said maximum price regulation made and promulgated under the Emergency Price

Control Act of 1942, Sections 901 to 946, both inclusive, Title 50 U.S.C.A.Appendix, as amended.

There is also set forth in this count the formula by which the maximum price of 16.1 cents per gallon was determined.

The statutory power to fix maximum prices is found in the Emergency Price Control Act, 50 U.S.C.A.Appendix, § 901 et seq. The Act was extended to June 30, 1945 by Public Law 383, 78th Congress, Second Session, 50 U.S.C.A.Appendix, § 901. Under 50 U.S.C.A.Appendix, § 904(a) it is provided that it shall be unlawful for any person to sell or deliver any commodity in violation of any regulation or order fixing or establishing price schedules thereunder, and under Section 925(b) of 50 U.S.C.A.Appendix, criminal penalties are provided for violation of the Emergency Price Control Act.

The maximum price for the sale of the particular gasoline sold and delivered by the defendant was prescribed by Section 7.4 of Maximum Price Regulation No. 88 (9 Federal Register 1783).

On December 8, 1944, the defendant filed his motion to quash the information. The motion to quash was overruled and subsequent thereto the defendant filed a demurrer to the information in which he incorporated all of the grounds set forth in the motion to quash except the allegation that at the time the court granted leave to file the information there was no evidence before the court of probable cause of guilt on the part of the defendant and that the verification of the information was not sufficient to establish probable cause of guilt.

In Hill v. United States, 8 Cir., 15 F.2d 14, this court said: "A motion to quash an indictment is addressed to the discretion of the court, and will ordinarily not be reviewed in an appellate court. In the case of United States v. Rosenburgh, 7 Wall. 580, 74 U.S. 580, 19 L.Ed. 263, the court said: 'The motion to quash, upon which the question now before us arose, was clearly determinable as a matter of discretion. It was preliminary in its character, and the denial of the motion could not finally decide any right of the defendant. The rule laid down by the elementary writers is, that "a motion to quash is addressed to the sound discretion of the court, and if refused, is not a proper subject of exception." When made in behalf of defendants, it is usually refused, unless in the clearest cases, and the grounds of it are left to be availed of, if available, upon demurrer or motion in arrest of judgment.' "

In United States v. Hamilton, 109 U.S. 63, 3 S.Ct. 9, 27 L.Ed. 857, the court said: "As a motion to quash is always addressed to the discretion of the court, a decision upon it is not error, and cannot be reviewed on a writ of error."

In Conway v. United States, 9 Cir., 142 F.2d 202, and Tudor v. United States, 9 Cir., 142 F.2d 206, it was held that the denial of a motion to quash an indictment is not reviewable.

However, in view of the fact that the motion to quash raises the question of the right of the court to permit the information to be filed, which ground is not included in the demurrer to be considered later, we feel that the particular contention should be determined by us.

The information was verified by a special agent of the Office of Price Administration, and in addition to the verification by such special agent the United States Attorney also verified the allegations contained in the information by affidavit executed before the clerk of the court.

In the case of Corson v. United States, 9 Cir., 147 F.2d 437, it was held that probable cause of guilt is sufficiently established by a verification of an information by the affidavit of an investigator of the Office of Price Administration.

In Albrecht v. United States, 273 U.S. 1, 6, 47 S.Ct. 250, 252, 71 L.Ed. 505, the court said: "The United States attorney, like the Attorney General or Solicitor General of England, may file an information under his oath of office, and, if he does so, his official oath may be accepted as sufficient to give verity to the allegations of the information."

The motion to quash the information was properly overruled by the trial court.

This brings us to a consideration of the demurrer to the information, the chief grounds of which are that the regulations alleged to have been violated by the defendant were not set out in the information; that the Second War Powers Act of 1942, as amended, supra, cannot be made a basis for prosecution of the defendant under count III; that the alleged violations contained in count IV of the Emergency Price Control Act of 1942, as

amended, cannot be prosecuted by information; that the same expired on June 30, 1944, prior to the date of the alleged offense by the defendant; and that the facts are not alleged with reasonable particularity so as to advise the defendant of the nature of the offense sought to be charged.

In Clement v. United States, 8 Cir., 149 F. 305, 313, the court said: "The well-known canons of construction employed to ascertain the meaning of written instruments should not be ignored to secure mere technical accuracy, when that is unnecessary for the legitimate protection of the accused. Language should not be strained either to convict or to acquit; it should receive a reasonable and fair interpretation to accomplish, on the one hand, the indispensable purpose of fairly apprising the accused of the charge against him, so that he may intelligently prepare to meet it, and be enabled to make use of an acquittal or conviction to protect himself against another charged for the same offense; and, on the other hand, to enable the government without unnecessary embarrassment to effectually enforce its laws and bring the guilty to punishment. We must so far as possible, consistently with insuring an accused person a fair and impartial trial, guarantied to him by the Constitution and laws, disregard form, imperfection of statement, and unimportant defects, which do not reasonably tend to prejudice the accused."

18 U.S.C.A. § 556, provides that an indictment shall not be deemed insufficient nor shall the judgment or other proceeding thereon be affected by reason of any defect or imperfection in matter of form only which does not tend to prejudice the defendant.

In Smith v. United States, 8 Cir., 83 F.2d 631, 637, this court said: "In general, an indictment for a statutory offense need only charge a defendant with acts in the substantial words of the statute sufficient to apprise him of the nature of the accusation; and, if it charges all the essential elements and ingredients of the offense, it is good as against a general demurrer."

In Hagner v. United States, 285 U.S. 427, 431, 52 S.Ct. 417, 419, 76 L.Ed. 861, it is said: "The true test of the sufficiency of an indictment is not whether it could have been made more definite and certain, but whether it contains the elements of the offense intended to be charged, 'and sufficiently apprises the defendant of what he must be prepared to meet, and, in case any other proceedings are taken against him for a similar offense, whether the record shows with accuracy to what extent he may plead a former acquittal or conviction.' Cochran v. United States, 157 U.S. 286, 290, 15 S.Ct. 628, 630, 39 L.Ed. 704; Rosen v. United States, 161 U.S. 29, 34, 16 S.Ct. 434, 480, 40 L.Ed. 606."

An analysis of the counts upon which the defendant was convicted convinces the court that they meet the demands of the law of pleading. The particular regulation charged to have been violated is described by number and the volume and page in the Federal Register. where it may be found is shown. The particular statutes which it is alleged the defendant violated are named and the official citation of the statutes are set forth in the information. Nothing more was required insofar as the identification of the regulations and statutes are concerned. The information plainly advised the defendant that he was charged with violating certain specified regulations and statutes. It was not necessary to incorporate in the information the provisions of them. The defendant was charged with knowledge of Ration Order No. 5C which he was accused of violating by count III; likewise, he was charged with knowledge of the maximum price of gasoline as fixed by Section 7.4 of Maximum Price Regulation No. 88, since both of these regulations had been published in the Federal Register and the volume and page were set forth in the information. Such publication created a rebuttable presumption of notice to the defendant. 44 U.S.C.A. § 307; Flannagan v. United States, 9 Cir., 145 F.2d 740. The contents of the Federal Register are judicially noticed and may be cited by volume and page number.

We have heretofore shown that both the Emergency Price Control Act of 1942 and the Second War Powers Act of 1942 were in full force and effect on the date of the alleged violation by the defendant.

Count III charged a violation of a ration order validly issued under the Second War Powers Act of 1942, as amended. And a violation of such an order is a criminal offense under the terms of the Act. United States v. Randall et al., 2 Cir., 140 F.2d 70.

In Yakus v. United States, 321 U.S. 414, 447, 64 S.Ct. 660, 678, 88 L.Ed. 834, the court in considering the Emergency Price Control Act of 1942, as amended, said: "Subject to the requirements of due process, which are here satisfied, Congress could make criminal the violation of a price regulation. The indictment charged a violation of the regulation in the district trial, and the question whether petitioners had committed the crime thus charged in the indictment and defined by Congress, namely, whether they had violated the statute by willful disobedience of a price regulation promulgated by the Administrator, was properly submitted to the jury."

It is also alleged in the demurrer that the offenses charged could not be prosecuted by information and that any prosecution for such offenses must be upon an indictment returned by a grand jury as required by Amendment 5 to the Constitution of the United States.

The offenses charged were misdemeanors. 18 U.S.C.A. § 541. They are not infamous within the meaning of the Fifth Amendment and could be prosecuted on information. Falconi et al. v. United State, 6 Cir., 280 F. 766; Rossini v. United States, 8 Cir., 6 F.2d 350; Brede v. Powers, 263 U.S. 4, 44 S.Ct. 8, 68 L.Ed. 132.

It follows from what we have said that the demurrer was properly overruled.

Immediately following the overruling of the demurrer the defendant filed a motion for a bill of particulars, in which he demanded particulars as to the specific statutes and regulations he was charged with violating. As heretofore shown, the information referred specifically to the regulations and the statutes involved. The purpose of a bill of particulars is to secure facts, not legal theories. Rose v. United States, 9 Cir., 149 F.2d 755, 758; Flannagan v. United States, supra.

In Braatelien et al. v. United States, 8 Cir., 147 F.2d 888, 892, this court said: "Moreover, a motion for a bill of particulars is addressed to the sound discretion of the court and, unless it is made to appear that this discretion has been abused, the ruling will not be reversed. Hartzell v. United States, 8 Cir., 72 F.2d 569, 575; Pines v. United States, 8 Cir., 123 F.2d 825, 829."

We are convinced that the defendant was not lacking as to information of the acts charged to have been committed by him and the regulations and statutes violated thereby. Thus the court did not err in overruling the motion for a bill of particulars.

At the conclusion of the testimony introduced by the Government the defendant moved to withdraw from the consideration of the jury all counts in the information on the grounds theretofore included in the motion to quash the information and the demurrer and the further ground that the testimony was insufficient to support a verdict of guilty. The motion was overruled and the defendant without offering any evidence on his own behalf rested and renewed his motion, which motion was again overruled.

In the argument the defendant contends that the Government failed to prove the material allegations in counts III and IV by competent evidence, in that the testimony of C. T. Studley was so contradictory as to have no probative value and that Studley was an accomplice and there was no corroboration of his testimony.

It will be borne in mind that C. T. Studley is the person named in the counts to whom the defendant is alleged to have sold the gasoline without receiving ration coupons therefor and who paid the defendant a sum in excess of the lawful maximum tank wagon price in force at the time. The testimony of the witness is positive and supports the allegations in each count.

In 9 Cyclopedia of Federal Procedure, § 4332, p. 455, it is said: "The rules that an appellate court cannot weigh the evidence nor pass on the credibility of witnesses, and hence will not disturb a conviction on conflicting evidence if there was any testimony proper to go to the jury in support of the verdict, are so well settled by a multitude of federal decisions that it is deemed a waste of space to cite more than a few of the decisions so holding."

In Ryan v. United States, 8 Cir., 99 F.2d 864, 866, this court said: "The jury having found the appellant guilty, we must accept that view of the evidence which is most favorable to the Government. Walker v. United States, 8 Cir., 93 F.2d 383; Galatas v. United States, 8 Cir., 80 F.2d 15; Marx v. United States, 8 Cir., 86 F.2d 245."

Again on page 868 of 99 F.2d in the same case this court said: "The mere fact that a witness' testimony may to some

extent be self-contradictory does not prevent its constituting substantial evidence. Craig v. United States, 9 Cir., 81 F.2d 816. The credibility of the witness and the weight to be given his testimony are, of course, matters to be determined by the jury. New Amsterdam Casualty Co. v. Iowa State Bank, 8 Cir., 1 F.2d 196; Yellow Cab Co. v. Kelly, 3 Cir., 62 F.2d 1032."

Conceding that the witness, Studley, was an accomplice because of his acts in receiving the gasoline without surrendering ration coupons therefor and in paying for the gasoline a sum in excess of the maximum price and conceding that his testimony was not corroborated, still the jury, if convinced beyond a reasonable doubt of the guilt of the defendant, was justified in returning a verdict on such uncorroborated testimony. Brickey v. United States, 8 Cir., 123 F.2d 341, 345; United States v. Schwartz et al., 2 Cir., 150 F.2d 627, 628.

In 9 Cyclopedia of Federal Procedure, § 4334, p. 458, the rule is stated as follows: "As to the necessity for corroboration of the testimony of an accomplice, the rule in the federal courts differs from the rule in most of the state courts, in that the federal courts hold that a conviction may be sustained on the uncorroborated testimony of an accomplice, and that a state statute to the contrary is not controlling."

In Caminetti v. United States, 242 U.S. 470, 495, 37 S.Ct. 192, 61 L.Ed. 442, L.R.A. 1917F, 502, Ann.Cas.1917B, 1168, the court held that it was the better practice for courts to caution juries against too much reliance upon the testimony of accomplices and to require corroborating testimony before giving credence to such evidence but that while this is so there is no absolute rule of law preventing convictions on the testimony of an accomplice if the jury believes such testimony.

The record is silent as to the instructions given the jury by the trial court, and we assume that if a cautionary instruction had been requested by the defendant that the court would have given it.

Even though the witness, Studley, were an accomplice and corroboration of his testimony should be required, still the record discloses ample corroboration. The witness George Richardson testified that on October 4, 1944, he saw gasoline unloaded at the filling station of the witness, Studley. At that point one of the attorneys for the defendant, in open court, admitted that the gasoline was delivered to the witness, Studley, by the defendant and from a truck owned by the defendant. Thus, if corroboration were necessary, the testimony of the witness, Studley, as to delivery of gasoline by the defendant was directly corroborated.

The competent testimony was sufficient to sustain the verdict of the jury and it should stand unless it was induced by a consideration of the incompetent testimony hereinafter considered by us.

At the trial, the court, over the objections and exceptions of the defendant, permitted the witness, John Peduzi, to testify in response to questions propounded by the United States Attorney that in a conversation with the defendant on August 27, 1944, the defendant stated that he was selling gasoline to Sioux City filling stations at 20 cents a gallon and would take coupons to the station the night before and pick them up later, and that he was making plenty of money and was going to make it now and quit when the war was over.

In count V it was alleged that the defendant on October 5, 1944, sold to the witness, Arthur F. Russell, a quantity of gasoline without receiving from Russell ration coupons, and in count VI that on the same date the defendant received from Russell a price of 22½ cents per gallon for the gasoline, which was in excess of the maximum tank wagon price. In addition to testifying to the transactions alleged, the witness was permitted over the objections and exceptions of the defendant to testify that for about three months prior to October 5, 1944, he had purchased gasoline once a week and had paid the defendant 22½ cents per gallon, and that in none of the sales prior to October 5, 1944, had he given the defendant ration coupons; that the weekly purchases from the defendant during the three months were 640 gallons.

It was alleged in count I that the defendant on October 4, 1944, delivered to the witness, W. O. Pence, a quantity of gasoline without receiving ration coupons therefor, and in count II, on the same date, that the defendant was paid the sum of 24 cents per gallon for the gasoline which was in excess of the maximum tank wagon price.

In addition to testifying to the transactions alleged in the information, the wit-

ness was permitted over the objections and exceptions of the defendant to testify that in April or May, 1944, the defendant told him that he would sell him gasoline without coupons.

The witness, C. T. Studley, testified to the transactions alleged in counts III and IV and also over the objections and exceptions of defendant that the defendant delivered gasoline to him on two or three occasions prior to October 4, 1944, and that on one of the occasions he paid the defendant 19½ cents per gallon. The first purchase occurred in June 1944, and the second probably a month later, and that the defendant did not ask for coupons, but that he gave him ration coupons for the gasoline delivered on the second sale.

The general rule is that in a criminal prosecution proof which shows or tends to show that the accused is guilty of the commission of other crimes and offenses at other times, even though they are of the same nature as the one charged in the indictment, is incompetent and inadmissible for the purpose of showing the commission of the particular crime charged. The accused is to be convicted, if at all, on evidence showing his guilt of the particular offense charged in the information. It is not competent to prove that the accused committed other crimes of a like nature for the purpose of showing that he would be likely to commit the crime charged in the information. Evidence of other crimes compels a defendant to meet charges of which the information or indictment gives no information, confuses him in his defense and raises a variety of false issues. Thus, the attention of the jury is diverted from the charge contained in the indictment or information. 20 Am. Jur. § 309, p. 287; Gart v. United States, 8 Cir., 294 F. 66; Paris v. United States, 8 Cir., 260 F. 529, 531.

In the Paris case, supra, the court speaking through Judge Walter H. Sanborn, said: "Such evidence tends to draw the attention of the jury away from a consideration of the real issues on trial, to fasten it upon other questions, and to lead them unconsciously to render their verdicts in accordance with their views on false issues rather than on the true issues on trial. Speaking of evidence of other similar offenses, the Circuit Court of Appeals of the First Circuit, in the case last cited (Fish v. United States, 215 F. 544, 545 L.R.A.1915A, 809), well said: 'Evidence of this character necessitates the trial of matters collateral to the main issue, is exceedingly prejudicial, is subject to being misused, and should be received, if at all, only in a plain case.' "

In Sauvain v. United States, 8 Cir., 31 F.2d 732, 733, this court said: "Care should be exercised in admitting evidence of other and distinct offenses; trials might soon become so involved in collateral matters that the issues would be lost sight of; moreover, if the defendant is shown to have made another sale, juries are apt to convict regardless of the evidence on the offense charged, and the defendant having no notice of the collateral charge, might be entirely unprepared to meet it."

In 1 Wharton's Criminal Evidence, 11th Ed., p. 485, it is said: "Proof of other crimes cannot be shown to prove a habit or predisposition of the accused to commit crime on the ground that such proof would show a probability of the guilt of the defendant of the crime charged. Evidence of the commission of independent crimes is irrelevant where it has no tendency to prove some material fact in connection with the crime charged or where it merely tends to show that the accused is a criminal generally. In other words, evidence of a collateral offense must never be received as substantial evidence of the offense on trial; and this rule extends to the proof of the accusation of another crime as well as to evidence of its actual commission."

The Government contends that the evidence of other offenses was offered to identify the defendant; that the acts charged in counts III and IV were not done inadvertently or by accident but were deliberately, wilfully and purposely committed; and to prove a wilful intent on the part of the defendant in committing the acts charged.

In Brickey v. United States, supra, 123 F.2d at page 344, this court said: "The general rule is that a crime can not be established by evidence of other distinct crimes not charged in the indictment. But where intent and knowledge are essential elements of the offense charged, evidence of transactions so connected with the specific offense charged that it tends to show criminal intent or guilty knowledge is admissible." (Citing numerous cases.)

The case of King v. United States, 8 Cir., 144 F.2d 729, is illustrative of the general rule and the application of the

exception relied upon by the Government in this case.

■ The fact that the events related in the testimony objected to occurred at various times prior to the acts charged in the information affects the weight of such testimony rather than the admissibility and the question of remoteness in time of the acts detailed by such testimony is committed to the discretion of the trial court and will not be interfered with unless it is clear that the questioned evidence has no connection or bearing upon any of the issues involved in the charge. King v. United States, supra, and authorities cited.

■ Evidence of the commission of other crimes is ordinarily held to be admissible where it tends to establish motive, identity, a common scheme or plan so that proof of one act tends to establish the other and to show guilty knowledge on the part of the defendant. 9 Cyclopedia of Federal Procedure, § 4315, p. 429.

■ The offenses of which the defendant was convicted are misdemeanors. Proof of specific criminal intent to commit such an offense is not essential, and the use of the word "wilful" in subsection 2(a) (5) of § 633, 50 U.S.C.A.Appendix, the Second War Powers Act of 1942, as amended, and in Section 925(b), 50 U.S. C.A.Appendix, the Emergency Price Control Act of 1942, as amended, does not require proof of such specific intent on the part of a defendant charged with an offense under the Acts.

In Zimberg v. United States, 1 Cir., 142 F.2d 132, 137, the court defined the word "wilfully" in an instruction to the jury as meaning knowingly and deliberately. The court said: "In some statutes the word 'wilfully' may have the meaning contended for by counsel for the defendants, but it does not have that meaning in all statutes. It 'is a word of many meanings' depending upon the context in which it is used. Spies v. United States, 317 U.S. 492, 497, 63 S.Ct. 364, 367, 87 L.Ed. 418. 'In statutes denouncing offences involving turpitude, "willfully" is generally used to mean with evil purpose, criminal intent or the like. But in those denouncing acts not in themselves wrong, the word is often used without any such implication. Our opinion in United States v. Murdock, 290 U.S. 389, 394, 54 S.Ct. 223, 225, 78 L.Ed. 381, shows that it often denotes that which is "intentional, or knowing, or voluntary, as

distinguished from accidental," and that it is employed to characterize "conduct marked by careless disregard whether or not one has a right so to act." ' United States v. Illinois Central Railroad Co., 303 U.S. 239, 242, 58 S.Ct. 533, 535, 82 L.Ed. 773. In view of this statement there can be no doubt but that the court below gave the jury a correct definition of the word 'wilfully' as used in the statute under consideration." See also, Bowles v. Ammon, D.C.Neb., 61 F.Supp. 106, 117, and cases there cited.

In 22 C.J.S., Criminal Law, § 8, p. 58, it is said: "Crimes have been divided according to their nature into crimes mala in se, and crimes mala prohibita; the former class comprises those acts which are immoral or wrong in themselves, such as murder, rape, arson, burglary, and larceny, breach of the peace, forgery, and the like, while the latter embraces those things which are prohibited by statute because they infringe upon the rights of others, although no moral turpitude may attach, and they are crimes only because they are prohibited by statute. Generally, but not always, crimes mala in se involve moral turpitude, while crimes mala prohibita do not."

The testimony relating to conversations with the defendant referred, not to any act charged in the information, but to separate and independent transactions, although such transactions were similar to the ones charged to have been committed by the defendant. Likewise, the evidence of sales in the months preceding October, 1944, tended to show that the defendant was guilty of offenses separate and distinct from the ones charged in the information. The prior offenses, if any, were not connected with the offenses for which the defendant was on trial. The fact that the other offenses were of a like nature and were offenses against the same statutes was not competent to prove that the defendant committed the acts charged in the information.

In 1 Wharton's Criminal Evidence, 11th Ed., § 360, pp. 567, 568, it is said:

"Certain conditions must always exist as a predicate to the admission of evidence of other crimes. Such evidence, being a departure from the general rule of exclusion, is only admitted to render more certain the ascertainment of the exact truth as to the charge under trial. In any loose relaxation of the rule the danger to the ac-

cused is that evidence may be adduced of offenses that he has not yet been called upon to defend, of which, if fairly tried, he might be able to acquit himself.

"In the first place, the collateral offense for which an accused has not been tried tends to prove his inclination towards crime, that is, to render more probable his guilt of the charge under trial, which is an absolute violation of the rule. It does not reflect in any degree upon the intelligence, integrity, or the honesty of purpose of the juror that matters of a prejudicial character find a permanent lodgment in his mind, which will inadvertently and unconsciously, enter into and affect his verdict. The juror does not possess that trained and disciplined mind which enables him either closely or judicially to discriminate between that which he is permitted to consider and that which he is not. Because of this lack of training, he is unable to draw conclusions entirely uninfluenced by the irrelevant prejudicial matters within his knowledge."

The jury acquitted the defendant of all charges except those contained in counts III and IV in which C. T. Studley was the receiver and purchaser, respectively, of the gasoline on October 4, 1944.

The defendant did not testify in his own behalf or offer any testimony. On the other hand, he admitted through his attorney that on October 4, 1944, he delivered to the witness, Pence, the gasoline described in counts I and II of the information. The same admission was made as to the delivery of the gasoline to the witness, Studley, described in counts III and IV, and the delivery of the gasoline to the witness, Russell, described in counts V and VI, and to the witness, Newton, described in counts VII and VIII. After these admissions were made the essential questions whether the gasoline was delivered without receiving ration coupons and was sold for a sum in excess of the maximum price remained and were the only questions to be determined by the jury. We entertain no doubt but that the jury was influenced in determining these issues against the defendant because of the admission of conversations with the defendant totally unrelated to the specific acts charged and of the testimony that the defendant delivered gasoline without receiving ration coupons and for a sum in excess of the maximum price on dates other than those charged in any count in the information.

The language used by this court in Grantello v. United States, 8 Cir., 3 F.2d 117, 119, is peculiarly applicable to the facts in this case. There the court said: "The defendant had demurred to each count of the indictment on the ground that it was insufficient, and did not set out the facts and circumstances of the offense, so as to apprise him with what he was charged, or to enable him to prepare his defense, and those demurrers were overruled. He presented to the court below a petition for a bill of particulars under each count of the indictment on the same ground, and that petition was denied. He was not charged in the indictment with any of the sales, possessions, or offenses about which Gunderson and Prewitt testified, nor was he on trial for any thereof. They were in no way connected with any of the offenses charged in the indictment, and no question of the intent of the defendant was material or in issue in this case. It is neither competent, fair, nor just to a defendant to receive evidence against him of like offenses to those charged in the indictment under which he is on trial where no question of his intent is in issue, and no connection between such offenses and those charged is proved. Marshall v. United States, 2 Cir., 197 F. 511, 513, 515, 117 C.C.A. 65; Scheinberg v. United States, 2 Cir., 213 F. 757, 760, 130 C.C.A. 271, Ann.Cas.1914D, 1258; Fish v. United States, 215 F. 544, 551, 552, 132 C.C.A. 56, L.R.A.1915A, 809."

Had the Government desired to introduce testimony of sales it claimed that the defendant made on dates prior to the sales alleged in the information, it would have been nothing more than fair to have legally and formally charged the defendant with the making of such sales. He would have thus been apprised of the charge against him and possibly have been prepared to introduce testimony to refute the truth of the charge. Instead of following such procedure, the Government sought to and did prove by leading questions over the objections of the defendant the other independent sales made prior to the dates charged in the information. Such sales were entirely separate transactions and had no connection whatsoever with the sales charged in the information. When the gasoline was delivered and the ration coupons not received and a sum in excess of the maximum price paid for it, the offenses were complete and at an end.

The general rule is the outgrowth of the long and sane experience, study and wisdom of jurists and lawgivers. It is one of the distinguishing features of our common-law jurisprudence. An accused, whether guilty or not, is entitled to a fair and impartial trial of the charge against him. He may be a bad man generally and may have committed other crimes for which he has not been punished, but justice forbids his conviction except of the offense of which he is charged. The exceptions to the rule are well established and when properly applied are conducive to justice but should not be so extended as to destroy the rule.

The incompetent evidence was prejudicial to the rights of the defendant and demands a reversal of the judgment of conviction.

For the error in the admission of testimony of independent sales made prior to the dates charged in the information and conversations relating thereto, the judgment appealed from is reversed and the cause is remanded to the District Court, with directions to grant a new trial.