## LOTTO et al. v. UNITED STATES.

### No. 13176.

Circuit Court of Appeals, Eighth Circuit.

Oct. 22, 1946.

Rehearing Denied Dec. 4, 1946.

Walter F. Maley, of Des Moines, Iowa (Frank J. Comfort, of Des Moines, Iowa, on the brief), for appellants.

Tobias E. Diamond, U. S. Atty., of Sioux City, Iowa (William B. Danforth, Asst. U. S. Atty., of Sioux City, Iowa, on the brief), for appellee.

Before GARDNER, WOODROUGH, and RIDDICK, Circuit Judges.

WOODROUGH, Circuit Judge.

Appellants, Frank Lotto and Joseph Raymond Cullotta, were jointly charged in an indictment containing ten counts. Counts I–VII inclusive charged them with unlawful possession of certain gasoline ration coupons which they had acquired by theft from named persons in Wisconsin, Minnesota, and Iowa, in violation of Sec. 1394.-8177(c) of Revised Ration Order 5(c) (10 Fed. Register 4893) and General Ration Order 8, as amended (8 Fed. Register 3783), issued under authority of the Second War Powers Act, 50 U.S.C.A.Appendix, § 633. Counts VIII–X inclusive charged the theft of the coupons involved in counts V–VII inclusive, in violation of 18 U.S.C.A. § 99. It was charged that the coupons were the property of the United States Government and that the persons from whom they were stolen were in temporary lawful possession thereof. Before the trial defendants moved to consolidate the first seven counts, or, in the alternative, to require the government to elect on which of the counts to proceed to trial. The motion was overruled, but at the close of the evidence the seven counts were consolidated. Defendants were convicted on the consolidated counts and on each of the three counts charging larceny of government property. Defendant Lotto was sentenced to one year for unlawful possession of ration coupons and to five years on each of the larceny counts, and Cullotta was sentenced to one year for unlawful possession and seven years on each larceny count, the sentences on all counts as to each defendant to run concurrently.

■ Although the government contends that the Bill of Exceptions was not settled within the time prescribed by rule 9 of the Rules of Practice and Procedure in Criminal Cases, 18 U.S.C.A. following section 688, another division of this court, after a hearing, permitted it to be filed with the transcript, and upon our examination of the showing made excusing the delay we find that appellants used due diligence, and in the exercise of its discretion the court has considered the bill of exceptions as sufficient. See Ray v. United States, 301 U.S. 158, 57 S.Ct. 700, 81 L.Ed. 976.

On May 25, 1945, the police of Mason City, Iowa, received a broadcast over the state police radio system to be on the lookout for a maroon Plymouth or Dodge automobile, bearing Illinois license plates and carrying two men who were suspected of stealing gasoline ration coupons. At about 2:45 p. m. Officer Charles Van Horn of the Mason City Police force observed an automobile answering the description that had been broadcast, pursued it and forced it to stop. After questioning defendants, who were in the car, Van Horn radioed the police station that he had stopped defendants and proceeded to give the automobile a casual search. Two Iowa State Highway patrolmen came in response to Van Horn's call, a further search was made and the state police found the coupons under the floor mat of the automobile. The coupons were seized and subsequently were turned over to federal authorities. The search was made without the issuance of a warrant, either state or federal.

Appellants timely moved to suppress the evidence arising out of the seizure (See Nardone v. United States, 308 U.S. 338, 60 S.Ct. 266, 84 L.Ed. 307) and error is assigned to the overruling of the motion. Appellants contend that the automobile was improperly searched and the coupons seized by state officers, that the officers made the search and seizure for the sole purpose of enforcing federal laws and were acting in cooperation with or at the instigation of agents or officers of the United States, and that use of the seized coupons as evidence against appellants violated their constitutional rights guaranteed by the 4th and 5th Amendments.

■■ It is well settled that the United States may avail itself of evidence improperly seized by state officers operating entirely on their own account. Weeks v. United States, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652, L.R.A.1915B, 834, Ann.Cas. 1915C, 1177; Burdeau v. McDowell, 256 U.S. 465, 41 S.Ct. 574, 65 L.Ed. 1048, 13 A.L.R. 1159; Bruce v. United States, 8 Cir., 73 F.2d 972; Lerskov v. United States, 8 Cir., 4 F.2d 540; Elam v. United States, 8 Cir.

7 F.2d 887. But appellants contend that the evidence introduced at the hearing on the motion to suppress established that the state officers who conducted the search were acting in concert with agents or officers of the United States, and it is equally well settled that under the 4th Amendment the United States may not use evidence improperly seized by state officers, if the federal government itself, through its agents acting as such, participates in the wrongful search and seizure. Byars v. United States, 273 U.S. 28, 47 S.Ct. 248, 71 L.Ed. 520; Gambino v. United States, 275 U.S. 310, 48 S.Ct. 137, 72 L.Ed. 293, 52 A.L.R. 1381.

The evidence in this case fails to establish participation in any manner in the search and seizure by the United States or any of its agents. The arresting officers testified that they had no communication with any federal officer regarding the matter prior to or at the time of the search, and that they acted solely in response to a state patrol radio call. Nor does the record disclose that the local and state police in conducting the search had in mind the purpose of aiding in a federal prosecution, a circumstance which distinguishes Gambino v. United States, supra. For in the Gambino case it appeared that following repeal of the New York State prohibition law, federal authorities requested aid of state officials in arresting violators of the National Prohibition Law, 27 U.S.C.A. § 1 et seq., and state officers, in the belief that they were required to aid in the enforcement of that law and for the sole purpose of doing so, arrested defendants in that case, searched their automobile and seized intoxicating liquor found therein. Here the arrest, search and seizure were in consequence of a reported theft within the state.

While OPA regulations authorized local or state police to demand inspection of gasoline ration coupons and to receive surrender of coupons from unauthorized possessors,[1] the record before us affirmatively establishes that the arresting officers were not acting under authority of the regulation but that they pursued, arrested and searched appellants as suspected thieves. It appears that the state officers had reason to believe that the reported theft was a proper subject of a state prosecution. Code Iowa 1946, § 709.1; State v. Wilson, 95 Iowa 341, 64 N.W. 266. The search in the Gambino case was made solely for the purpose of aiding in the enforcement of the federal law and the fruits of the search could not have established a state offense. That appellants here were subsequently released to federal authorities and no state prosecution was instituted does not bring the case within the principle announced in the Gambino case.

■■ Appellants contend that the motion to suppress should have been granted in the absence of an affirmative showing by the federal officers who were interested in or initiated the prosecution, that they did not encourage or have knowledge of the search and seizure or act in concert with the state officers. As we stated in Schnitzer v. United States, 8 Cir., 77 F.2d 233, at page 235: "While courts should be alert to prevent encroachments upon constitutional guarantees, the right to such protection is a matter of proof with the burden upon the one alleging such protection." See also Nardone v. United States, 308 U.S. 338, 341, 60 S.Ct. 266, 84 L.Ed. 307. We

---

[1] Ration Order No. 5C, Section 1394.-8235(b) provided in part: "Upon demand made by any investigator of the Office of Price Administration or by any police officer, constable, or other law enforcement officer of the United States or of any state, county, or local government, every person shall produce for inspection any tire inspection record and gasoline deposit certificate and any gasoline coupon books, coupons, and other evidences in his possession or control, whether valid, invalid, void or expired in accordance with Ration Order No. 5C. Investigators of the Office of Price Administration and all police officers, constables and other law enforcement officers of the United States, or of any state, county or local government are authorized to make such inquiries of any person as may be pertinent to determine whether a violation of Ration Order No. 5C has been or is being committed, and are authorized to receive the surrender of all gasoline deposit certificates, gasoline coupon books, coupons and other evidences acquired by any person otherwise than in accordance with Ration Order No. 5C, whether valid, invalid, void or expired."

find nothing in the record tending to establish that federal agents initiated or acted in concert with the state officers. Regardless of the legality of the search and seizure the motion to suppress was properly overruled.

■ Over defendants' objection there was admitted in evidence an exhibit consisting of a slip of paper found in defendants' automobile by a state officer and an OPA investigator a few days after the arrest and the contention is made that the District Court abused its discretion in limiting cross-examination of the state officer who had identified the exhibit. It appears, however, that the court subsequently reversed its position, excluded the exhibit and informed the jury not to consider it. The exhibit was not shown to the jury and the latter was not informed of its contents. Under the circumstances, the ruling complained of, even if erroneous when made, was harmless and constituted no ground for reversal. Shaw v. United States, 8 Cir., 1 F.2d 199; Sloan v. United States, 8 Cir., 31 F.2d 902; Goldstein v. United States, 8 Cir., 63 F.2d 609; Allred v. United States, 9 Cir., 146 F.2d 193.

■ Appellants assign as error the action of the District Court in overruling the motion to consolidate counts I to VII inclusive, or in the alternative to require the government to elect the count on which it chose to proceed to trial. While the court did consolidate the counts at the end of the trial and imposed only one sentence on those counts, appellants contend that they were prejudiced by admission of testimony concerning theft of gasoline coupons in Wisconsin and Minnesota which were found in appellants' possession at the time of their arrest. But the alleged thefts in Wisconsin and Minnesota occurred the day preceding the thefts in Iowa for which appellants were tried and convicted, and evidence of these closely related transactions, though involving distinct acts of larceny, was clearly admissible under the larceny counts on the issue of intent and to establish a common scheme or plan. Kempe v. United States, 8 Cir., 151 F.2d 680; Kraus v. United States, 8 Cir., 87 F.2d 656; King v. United States, 8 Cir., 144 F.2d 729.

The government introduced evidence that gasoline ration coupons which had been received by gasoline distributors from customers in exchange for gasoline had disappeared from the distributors' trucks and that the coupons were subsequently found by the arresting officers in the automobile occupied by defendants, and that defendants were not the agents of the distributors and were not known to them. The coupons found in defendants' possession were identified as those which had been stolen. Counts VIII and IX of the indictment related to larceny of coupons from one Rosel and one Rosenberg in St. Ansgar, Iowa, on May 26, 1945. In this connection two witnesses who resided in St. Ansgar testified that they observed defendants on the streets of that city on May 26, 1945, and described the automobile in which defendants were riding. One of these witnesses testified that defendant Cullotta opened the door of Rosel's truck and took something from it and that the witness reported the incident to Rosel. The other witness testified that she observed defendants in the vicinity of a gasoline service station at which Rosenberg's truck was parked and saw Cullotta running from the station with something in his hand.

When apprehended defendants had in their possession a road map on which was traced a route extending through the towns and cities where the coupons were stolen.

Appellants' evidence consisted solely of testimony of Cullotta who stated that he had purchased the coupons found in his car for $12 from two men unknown to him and that Lotto had no knowledge of the transaction or of the fact that the coupons were in the automobile.

■ It is clear that the evidence, including as it does theft of the coupons, defendants' possession of the recently stolen property and identification of defendants by those who observed them around the gasoline trucks under suspicious circumstances, was sufficient to sustain conviction of both defendants.

■ The contention on which several assignments of error are predicated is that the ration coupons did not constitute government property. But under administra-

tive regulations the coupons remained the property of the Office of Price Administration.[2] This contention is settled against appellants in Davis v. United States, 66 S.Ct. 1256, 1258, in which the Supreme Court said:

"We are dealing here not with private papers or documents, but with gasoline ration coupons, which never became the private property of the holder but remained at all times the property of the government and subject to inspection and recall by it.

"At the times relevant here, gasoline was rationed. Dealers could lawfully sell it only on receipt of ration coupons. They in turn could receive their supplies of gasoline from the distributors only on delivery of coupons. It was required that a dealer at all times have coupons on hand at his place of business or in a bank equal to but not in excess of the gallonage necessary to fill his storage tanks. Possession of coupons obtained in contravention of the regulations was unlawful. The coupons remained the property of the Office of Price Administration and were at all times subject to recall by it. And they were subject to inspection at all times." See also Williams v. United States, 4 Cir., 151 F.2d 736.

Appellants contend that the provisions of the Second War Powers Act of 1942, granting power to issue the regulations making gasoline ration coupons government property and making unlawful their possession other than as prescribed in the regulations, constituted an unconstitutional delegation of legislative power. The Act, 50 U.S.C.A.Appendix, § 633, provides in part: "Whenever the President is satisfied that the fulfillment of requirements for the defense of the United States will result in a shortage in the supply of any material or of any facilities for defense or for private account or for export, the President may allocate such material or facilities in such manner, upon such conditions and to such extent as he shall deem necessary or appropriate in the public interest and to promote the national defense."

As stated by the Supreme Court in upholding the Emergency Price Control Act of 1942, in Yakus v. United States, 321 U.S. 414, at pages 424, 425, 64 S.Ct. 660, at page 667, 88 L.Ed. 834: "The essentials of the legislative function are the determination of the legislative policy and its formulation and promulgation as a defined and binding rule of conduct—here the rule, with penal sanctions, that prices shall not be greater than those fixed by maximum price regulations which conform to standards and will tend to further the policy which Congress has established. These essentials are preserved when Congress has specified the basic conditions of fact upon whose existence or occurrence, ascertained from relevant data by a designated administrative agency, it directs that its statutory command shall be effective. It is no objection that the determination of facts and the inferences to be drawn from them in the light of the statutory standards and declaration of policy call for the exercise of judgment, and for the formulation of subsidiary administrative policy within the prescribed statutory framework. See Opp Cotton Mills v. Administrator, supra, 312 U.S. 126, 145, 146, 657, 61 S.Ct. 524, 85 L.Ed. 624, and cases cited."

The provisions of Section 633 satisfy the requirements of the Yakus case, and in delegating power to effectuate a war-time rationing program by promulgating the rules and regulations involved herein, Con-

---

[2] Ration Order No. 5C:

Section 1394.8227(b) provided that all "gasoline deposit certificates and all coupon books, coupons, and other evidences are, and when issued shall remain, the property of the Office of Price Administration."

Ration Order 5C, Section 1394.8104 (a): "All coupon books, bulk coupons, inventory coupons, and other evidences, are, and when issued shall remain, the property of the Office of Price Administration. The Office of Price Administration may refuse to issue, and may suspend, cancel, revoke, or recall any ration and may require the surrender and return of any coupon book, bulk coupon, inventory coupons or other evidences during suspension or pursuant to revocation or cancellation, whenever it deems it to be in the public interest to do so."

gress acted within its constitutional authority. Randall v. United States, 5 Cir., 148 F.2d 234, certiorari denied 325 U.S. 885, 65 S.Ct. 1579, 89 L.Ed. 2000. See also Hirabayashi v. United States, 320 U.S. 81, 63 S.Ct. 1375, 87 L.Ed. 1774. The trial court properly proceeded on the theory that in May, 1945, gasoline ration coupons were the property of the United States and so informed the jury.

The fact that the particular ration coupons involved had been endorsed and transferred by the original holders for delivery of gasoline does not change their character as government property nor relieve appellants from the penal consequences of their theft. Appellants insist that the coupons had no value and could not be the subject of larceny. It is true the right to purchase gasoline under the rationing program was in the nature of a license which could not be stolen but the physical evidence of the license—the ration coupons themselves—remained the property of the United States and, aside from any slight monetary value they might have (see Keller v. United States, 7 Cir., 168 F. 697, where the value of the stolen blank checks belonging to the government was alleged to be six cents) these coupons were of great importance to the government in the administration of its rationing program. Though the used coupons could not legally have been used again for the retail purchase of gasoline, they had not served their full administrative purpose. The coupons were an indispensable part of the OPA accounting system. The distributors were required to deposit them in bank accounts kept by the distributors in accordance with OPA regulations, and ultimately the distributors were answerable to the Office of Price Administration for all such coupons. See Revised Ration Order 5C, Section 1394.8206a, and Section 1394.8218a; Revised General Ration Order 3A, as amended, 8 Fed.Reg. 11669, 13738. The government was vitally concerned with and entitled to protection against possible fraudulent or illegal use of its ration coupons. To hold otherwise would tend to thwart the rationing program established to distribute equitably the limited supply of gasoline and other scarce commodities available for civilian use at a time when the United States was engaged in a war to preserve its existence. We hold that used ration coupons remained government property and could be the subject of larceny. It was unnecessary for the government to prove the value of the stolen property. Donegan v. United States, 2 Cir., 287 F. 641. See also Jolly v. United States, 170 U.S. 402, 18 S.Ct. 624, 42 L.Ed. 1085; Williams v. United States, 4 Cir., 151 F.2d 736.

The appellants insist that there was a failure of proof in that there was no evidence that the particular coupons involved were the property of the United States or that they were in the lawful possession of the individuals from whom they were allegedly stolen. There was evidence, however, from which the jury might reasonably conclude that the coupons were lawfully issued and were taken from lawful possessors. The distributors from whom the coupons were stolen identified the coupons and testified that they had received them from their customers in the regular course of business transactions, and there was no suggestion that the coupons were not genuine. A similar contention was found to be without merit by the 9th Circuit Court of Appeals in Henderson v. United States, 143 F.2d 681. That case involved the conviction of a ration board official for embezzling ration coupons and the court there said, at page 683 of 143 F.2d: "It is, of course, in the realm of the possible that the coupons which were sold were not of those issued to the board, and as much can be said as to their genuineness. There may be lurking in the dark of silence some unusual, unthought-of set of circumstances which would show a monstrous mistake has been made. But the evidence is barren of any suggestions of those who might know with respect to circumstances along that line, and any such circumstance can only be conjured up by the imagination."

Appellants assign as error the giving of certain instructions. Instruction number 4 related to the manner in which gasoline ration coupons could, under OPA regulations, be legally acquired and possessed during May, 1945. It is contended

that the instruction was misleading and that there was no basis for it in the evidence because of absence of proof that the coupons involved had been lawfully issued. We have held that it was unnecessary to prove the facts surrounding issuance of the coupons and we find nothing in this instruction that was misleading or calculated to prejudice appellants.

Instruction number 7 informed the jury that during May, 1945, gasoline ration coupons were the personal property of the United States government. The instruction did not invade the province of the jury for it did not state that the particular coupons stolen were the property of the government, though it is difficult to perceive any basis for a finding that they were not.

As no exceptions were taken to other instructions complained of and no additional instructions were requested, defendants may not on appeal raise further objections to the instructions unless there was error resulting in a miscarriage of justice. Ray v. United States, 8 Cir., 114 F.2d 508, certiorari denied 311 U.S. 709, 61 S.Ct. 318, 85 L.Ed. 461; United States v. Levy, 3 Cir., 153 F.2d 995. But appellants insist that the instructions on larceny of government property counts failed to require the jury to find that the stolen coupons were government property, or had been unlawfully taken from the United States without its consent. These instructions authorized conviction on finding that defendants knowingly, wilfully, unlawfully and feloniously took from the persons named in the larceny counts, described gasoline ration coupons, without permission or consent of such persons. As all valid gasoline ration coupons were government property as a matter of law, and the jury was so instructed, and there was no issue concerning genuineness of the coupons involved, the trial court did not commit prejudicial error in failing in this instruction to inform the jury specifically that in order to convict defendants the jury must find that the stolen coupons were government property. The instructions read as a whole were fair and adequate and did not deprive appellants of a fair trial.

The sentences imposed on appellants for unlawful possession of ration coupons were expressly made to run concurrently with their more severe sentences for larceny of government property and added nothing to the time appellants are required to serve. Therefore, if any error had been committed in regard to the unlawful possession counts reversal would not be required, Dillon v. United States, 8 Cir., 113 F.2d 334; Holiday v. United States, 8 Cir., 130 F.2d 988; Coghlan v. United States, 8 Cir., 147 F.2d 233; Hirabayashi v. United States, 320 U.S. 81, 63 S.Ct. 1375, 87 L.Ed. 1774, and it is unnecessary to discuss in detail contentions advanced by appellants relating exclusively to unlawful possession counts. However, we have carefully examined all assignments and find no reversible error.

Affirmed.