**BARONE v. UNITED STATES.**

No. 14735.

United States Court of Appeals
Eighth Circuit.

July 22, 1953.

Eugene D. O'Sullivan, Omaha, Neb. (Eugene D. O'Sullivan, Jr., Omaha, Neb., on the brief), for appellant.

Edward J. Tangney, Asst. U. S. Atty., Omaha, Neb. (Joseph T. Votava, U. S. Atty., Omaha, Neb., and John E. Deming, Asst. U. S. Atty., Omaha, Neb., on the brief), for appellee.

Before GARDNER, Chief Judge, and SANBORN and · JOHNSEN, Circuit Judges.

GARDNER, Chief Judge.

Bennie Barone was indicted, tried, and convicted on Count I of an indictment which charged that on or about November 3, 1950, in Omaha, Douglas County, Nebraska, then knowing that an offense against the United States had been committed,

"to-wit: A violation of 18 U.S.C. 2314, in that Kenneth Allen Kitts, Yancy Douglas Hardy and Pasquale · Joseph Belcastro had transported and caused to be transported in interstate commerce from Laurens, and Sioux City, Iowa, to Omaha, Nebraska, certain stolen lawful money of the United States and securities exceeding $5,000.-00 in value, the securities consisting of American Express Company and Bank of America Traveler's Checks, knowing the same to have been stolen, did receive, relieve, comfort, and assist the said Yancy Douglas Hardy and Pasquale Joseph Belcastro in order to hinder and prevent their, the said Yancy Douglas Hardy's and Pasquale Joseph Belcastro's apprehension, trial and punishment."

The indictment contained two other Counts on both of which he was acquitted. We shall refer to the appellant as defendant. On defendant's motion he was furnished a Bill of Particulars. In his motion he asked that the government be required to set forth the way or manner in which it was claimed that the defendant " * * * 'did receive, relieve, comfort and assist' said Hardy and Belcastro in order to prevent their apprehension, trial and punishment together with the exact time and exact place in Omaha, Nebraska, where it is contended they were received, relieved, comforted and assisted." In response to the order based upon defendant's motion, the government in its Bill of Particulars stated:

"A. That the violation of 18 U.S. C. 2314 committed by Kenneth Allen Kitts, Yancy Douglas Hardy and Pasquale Joseph Belcastro was committed on the morning of November 3, 1950. That the stolen money and securities were transported by the said Kenneth Allen Kitts, Yancy Douglas Hardy and Pasquale Joseph Belcastro in an automobile on November 3, 1950.

"That to the best of our knowledge the actual amount and kind of money transported was as follows:

"Approximately $4,480.00 in lawful silver money of the United States,

"Approximately $8,000.00 in lawful paper money of the United States,

"Approximately $17,450.00 in American Express Traveler's Checks, consisting of the following:

(Description omitted for brevity.)

"Approximately $8,020 in Bank of America Traveler's Checks, consisting of the following:

(Description omitted for brevity.)

"It is further alleged that to the best of our knowledge said above American Express and Bank of America Checks were in the form shown on Exhibit 'A' attached hereto, except that at the time, no signature, other than that of the facsimile signature of the Treasurer of the American Express Company Checks and of the Founder-Chairman on the Bank of America Checks—appeared on the same nor did there at that time appear thereon any date, payee, bank stamp or perforation, and many of same were of different value.

"B. It is alleged that the defendant Bennie Barone did receive, relieve, comfort, and assist said Hardy and Belcastro in order to prevent their apprehension, trial and punishment, by receiving from them approximately $3,-100.00 of stolen lawful silver money of the United States and exchanging said money for lawful paper currency, which the said defendant Bennie Barone did thereafter deliver to the said Pasquale Joseph Belcastro; that said Bennie Barone received said silver money at about 10 A. M. on the morning of November 3, 1950 in Omaha, Nebraska at the house at 1314 South 24th Street, Omaha, Nebraska, and gave the paper currency to the said Belcastro in two instalments of $1,500.00 each on or about November 3, 1950 and November 6, 1950.

"C. It is alleged that said Kitts, Hardy and Belcastro drove in Belcastro's car in the early morning hours of November 3, 1950 from Laurens, Iowa to Sioux City, Iowa, arriving there at about 6 A. M. and leaving there about 8 A. M. still in Belcastro's car and taking with them all of the proceeds of the Laurens Bank Burglary except about $800.00. That after leaving Sioux City, Iowa said Kitts, Hardy, and Belcastro drove to Omaha, Nebraska with said stolen money and securities."

After being furnished the Bill of Particulars defendant moved to dismiss the indictment because it did not charge a crime against the laws of the United States, because it was duplicitous, because it was vague, indefinite and uncertain, and because the law under which it was drawn was unconstitutional. This motion was denied. Thereafter defendant was tried by the court and a jury and at the close of all the testimony he interposed a motion for acquittal which was denied and the case was submitted to the jury which returned a verdict of "guilty" on Count I and "not guilty" on Counts II and III of the indictment.

On his appeal defendant contends: (1) That the court erred in overruling his motion to dismiss the indictment because it is indefinite and non-informative and lacks precision, certainty and particularity in advising defendant as to the nature and cause of the accusation made against him; (2) That the court erred in overruling his motion for acquittal because the government failed to prove defendant guilty by evidence beyond a reasonable doubt and that there is no substantial evidence sustaining the verdict of guilty; (3) That substantial evidence is not sufficient to sustain a conviction in a criminal case, but the evidence must be such as to prove the defendant's guilt beyond a reasonable doubt and that any other rule or law would deny defendant due process of law as guaranteed by Article V of the Amendments to the United States Constitution; (4) That the court erred in overruling objections of defendant to various offers of hearsay testimony set out in his brief; (5) That the court erred in that it failed to instruct the jury on its own motion relative to the basic law governing the determination of the case in view of the fact that the government's Bill of Particulars limited the prosecution to proof within the area of the Bill; (6) That the court erred in that it denied bail to defendant pending this appeal.

Defendant's challenge to the indictment is based on the assertion that it is too indefinite and uncertain to inform him of the nature of the accusation against him. It is not pointed out in what particu-

lar the indictment is defective and it is observed that in the Bill of Particulars furnished him he was advised in unusual detail not only of the nature of the accusation against him, but of the alleged facts upon which the accusation was based. The test is not whether the indictment could possibly be made more definite and certain, but whether it contains every element of the offense intended to be charged and sufficiently informs the defendant of what he must be prepared to meet and whether in the event of his conviction he can plead that conviction as a defense in case other criminal proceedings are subsequently brought against him for the same offense. Hale v. United States, 8 Cir., 25 F.2d 430; Holmes v. United States, 8 Cir., 134 F.2d 125; Hewitt v. United States, 8 Cir., 110 F.2d 1; Keys v. United States, 8 Cir., 126 F.2d 181. In Hewitt v. United States, supra [110 F.2d 5], we said, "The true test of the sufficiency of an indictment is not whether it could have been made more definite and certain, but whether it contains the elements of the offense intended to be charged, 'and sufficiently apprises the defendant of what he must be prepared to meet, and, in case any other proceedings are taken against him for a similar offense, whether the record shows with accuracy to what extent he may plead a former acquittal or conviction.'" The same test is substantially reiterated by us in Holmes v. United States, supra [134 F.2d 129], where we said, "An indictment is sufficient if the defendant is able to ascertain from the charge what he is called upon to answer, to prepare his defense, and if necessary to plead the judgment on such charge as a bar to a second prosecution for the same offense. * * * The test is whether it contains every element of the offense intended to be charged and sufficiently apprises defendant of what he must be prepared to meet, and not whether the indictment might possibly be made more definite and certain." The challenge to the indictment is, we think, wholly without merit.

 The argument on the question of the sufficiency of the evidence to sustain the verdict is directed largely to the question of the credibility of the witnesses. On appeal the evidence must be viewed in a light most favorable to the prevailing party and we cannot concern ourselves with the question of the credibility of the witnesses nor the weight that should be given to their testimony. These are jury questions and we must assume that the jury resolved all conflicts in the evidence in favor of the government and we must likewise assume that the evidence proved all facts which it reasonably tended to prove. Finnegan v. United States, 8 Cir., 204 F.2d 105, and cases there cited.

There was evidence that Kenneth Allen Kitts, Yancy Douglas Hardy, and Pasquale Joseph Belcastro burglarized the Laurens State Bank at Laurens, Iowa, about the 3rd of November, 1950; that they transported the loot taken from the bank, which consisted of approximately $4,480 in silver money, approximately $8,000 in paper money, approximately $17,450 in American Express Company Traveler's Checks, and approximately $8,020 in Bank of America Traveler's Checks, to Sioux City, Iowa; that enroute to Sioux City, Iowa, they stopped at a filling station and telephoned one Prochelo, who on their request met them at the back door of his nightclub in Sioux City; that they there divided up the money between the three burglars and Prochelo, awarding Prochelo $800; that at that time the defendant was called by long distance telephone and at least two of the assembled men had conversation with him relative to the disposition of the silver money; that defendant knew that the money had been stolen from the Laurens State Bank and agreed that he would exchange it for paper money; that Prochelo first received $800 in silver and on protest was given paper money in exchange for this silver, less $50. Kitts, Hardy, and Belcastro then transported the loot from Sioux City, Iowa, to Omaha, Nebraska, where after taking Kitts to his home in Omaha, Hardy and Belcastro went to the home of the defendant in Omaha. Referring to this incident Belcastro, called as a witness for the government, testified substantially as follows:

"Hardy and I went up to Bennie Barone's house on South 24th Street,

Omaha, Nebraska, around 10:00 A. M. or just shortly after 10:00 A. M. Hardy and I walked to the door and knocked on the door and Bennie Barone answered. I asked him if anyone was home and he said, 'No.' He asked me if I had the silver. I said, 'Yes, it is in the car.' and Bennie Barone said, 'Bring it in.' After we made our presence known, he asked if we had the money and I said, 'Yes, it is in the car,' and he said, 'Bring it in.' Hardy and I carried the money in and put it out on the dining room table. Barone, Hardy, and myself were there. We carried the money in sacks and the basket. The money was still in rolls. We counted it there. There was $3,100.00. Barone said, 'I will see if I can get rid of it right now.' He walked into the other room and left Hardy and myself there in the dining room with the money. He came back and said, 'We can get rid of it right now.' He said, 'We will take it in my car.' We loaded the money up in Bennie Barone's car. We tried to get it all in a grip but it wouldn't fit. We put the surplus in the sacks. We took it out to Louis Varda's house. Bennie Barone was with Hardy and me. We went in there. Barone got out of the car and knocked at the door. I don't know what the conversation was. Barone came back to the car and said, 'Let's carry the money in.' Barone, Hardy and myself carried the money in. We took the money upstairs and put it in a chest. Then we left the house, got into the car and drove away. At the house Barone handed me $1,500.00 and said that was all that Varda had in the house. He said, 'He can get the other $1,500.00 tomorrow.' He said, 'It's as good as gold. Don't worry about it.' I gave Barone $50.00 at that time. Prochelo told me to give him that $50.00. I had only given Prochelo $750.00 for the $800.00 and he told me to give Barone that $50.00 for cashing his end of the silver in. After I got the $1,500.00 I gave Bennie Barone $50.00 of it and I gave Doug Hardy $1,100.00. When we counted the money at Barone's home there was $3,100.00. After that we deposited the money in the car. I took Doug Hardy to the airport. We went back to Bennie Barone's house first. Hardy wanted to get back to Texas. After we got back to Barone's house, either Barone or Hardy made a phone call to the airport for a reservation for that Texas plane. After that Barone and I and Hardy went out to the airport and left Hardy there. After that Barone and I went back down to his house and Barone asked me if we got very much money out of that bank at Laurens, Iowa, and I told him not too much. I told Barone that we got about $2,500.00 cash apiece and said we got a bunch of travelers checks out of there but I didn't know what the amount was. He asked me who had them and I told him that Kenneth Kitts had them and he asked if I kept my eyes on Kenneth Kitts. He had warned me prior to that to keep my eye on Kenneth Kitts. He was known as a holdout artist. I got the other $1,500.00."

This testimony of Belcastro's was supplemented and corroborated by various facts and circumstances, the details of which would unduly extend this opinion. It appears from the testimony that the defendant was advised in advance that the bank at Laurens, Iowa, was to be burglarized and as has been observed, he was communicated with immediately thereafter and was associated intimately with the participants, assisting and attempting to protect them in every way. Prochelo testified that Barone had agreed to go with him and the two Rowley brothers to New York City for the purpose of disposing of the travelers checks that had been stolen from the Laurens State Bank, and it is noted that Barone was furnished with a list of all the travelers checks the same as the participants in the burglary. After Prochelo had been arrested defendant went to Sioux City and interviewed Prochelo as to whom he had implicated in the statement he had made

and in one of these conversations said to Prochelo that it was funny his participation in it hadn't come out yet. And at a later date he sought to induce Prochelo to take the stand in his behalf and say Belcastro, who Barone thought was going to testify against him, was lying.

The verdict we think, is abundantly sustained by substantial evidence. Matthews v. United States, 8 Cir., 192 F. 490. It is however, argued that substantial evidence is not sufficient to sustain a verdict of guilty in a criminal case but that there must be evidence proving the defendant's guilt beyond a reasonable doubt. The jury in this case was so instructed and it is the jury which must be satisfied as to the guilt of the defendant beyond a reasonable doubt, and if on appeal there is substantial evidence we cannot say that it was insufficient to satisfy the jury of the guilt of the defendant beyond a reasonable doubt.

It is urged that the court erred in admitting certain testimony claimed to be hearsay as to defendant. It was, however, incumbent upon the government to prove the burglary of the bank by Kitts, Hardy, and Belcastro and the transportation of the stolen property in interstate commerce. On the trial of defendant as an accessory after the fact any evidence admissible to prove the principal crime was admissible against him and the evidence objected to as hearsay was not hearsay when offered as proof of the burglary and the transportation. Neal v. United States, 8 Cir., 102 F.2d 643. On oral argument counsel contended that defendant was prejudiced by needless proof of the burglary and transportation and suggested that this proof could all have been dispensed with by the introduction of the judgment of conviction of those guilty of the principal crime. However, defendant in the present prosecution was entitled to be confronted with the witnesses and the principal crime could not have been proven by the introduction of the judgment of conviction. Such a procedure would have been violative of defendant's constitutional right to be confronted with the witnesses against him. Kirby v. United States, 174 U.S. 47, 19 S.Ct. 574, 43 L.Ed. 890.

Defendant contends that the court erred because it did not by its instructions limit the government's proof to that disclosed by its Bill of Particulars. The short answer to this contention would seem to be that no such instructions were requested of the trial court, that the instructions given were not excepted to, and defendant cannot for the first time on appeal urge this question. Lotto v. United States, 8 Cir., 157 F.2d 623; Kempe v. United States, 8 Cir., 160 F.2d 406; Schuermann v. United States, 8 Cir., 174 F.2d 397. Neither were there any objections made to the introduction of evidence on the ground that the evidence offered was beyond the limits of the area covered by the Bill of Particulars.

Finally, it is contended that this court erred in denying defendant's application for bail pending appeal. The order denying the application for bail pending appeal was final and res judicata as to all questions except the amount. United States, ex rel. Heikkinen v. Gordon, 8 Cir., 190 F.2d 16. It is not reviewable by this court and there has been no allowance of a writ of certiorari by the Supreme Court. But quite aside from these considerations, the question has become moot in view of our conclusion that the judgment appealed from should be affirmed.

Defendant was represented by able counsel of wide experience and the record reflects no miscarriage of justice and no error prejudicial to the defendant. The judgment appealed from is therefore affirmed.