**UNITED STATES of America,
Appellee,**

v.

**Jerry Lee RUX, Appellant.**

**No. 23520.**

United States Court of Appeals
Ninth Circuit.

June 27, 1969.

Irving C. Paul, Jr. (argued), Seattle, Wash., for appellant.

Jerald E. Olson (argued), Asst. U. S. Atty., Eugene G. Cushing, U. S. Atty., Seattle, Wash., for appellee.

Before BARNES and CARTER, Circuit Judges, and TAYLOR,* District Judge.

TAYLOR, District Judge:

This is an appeal from the District Court's judgment (a jury having been waived) finding appellant guilty of violating Title 18 U.S.C. § 3.[1] The appellant (defendant) was charged in Count I of the Indictment with receiving money taken in a bank robbery in violation of Title 18 U.S.C. § 2113(c) and in Count II with being an accessory after the fact to a bank robbery in violation of said Section 3. The trial court found the appellant not guilty of the charge alleged in Count I and guilty as charged in Count II which count alleged the following:

"That on or about May 9, 1967, at Seattle, Washington, within the Northern Division of the Western District of Washington, JERRY LEE RUX, knowing that Jay Hugh Rux, Jr., had, by force and violence, taken from the person and presence of a teller at the Washington Mutual Savings Bank, Ballard Branch, on said date, money which was in the care, custody, control, management, and possession of said bank, did give assistance and comfort to the said Jay

* Hon. Fred M. Taylor, United States District Judge, for the District of Idaho, sitting by designation.

1. "§ 3. Accessory after the fact
 Whoever, knowing that an offense against the United State has been committed, receives, relieves, comforts or assists the offender in order to hinder or prevent his apprehension, trial or punishment, is an accessory after the fact.
 * * * "

Hugh Rux, Jr., with intent thereby to prevent his apprehension and trial for such offense."

The issue present on this appeal is whether the evidence presented before the trial court was and is sufficient to sustain the conviction of appellant. The appellant did not testify at the trial and does not now dispute the evidence introduced by the Government. He strenuously argues that the evidence was and is not sufficient to convict him of the charge alleged in Count II.

An examination of the record reveals that appellant's brother, Jay Hugh Rux, Jr., robbed the Ballard Branch of the Washington Mutual Savings Bank of approximately $6,608, at about 10:00 a. m. on May 9, 1967. On Monday, May 8, 1967, the appellant and his brother Jay had dinner at appellant's apartment with other members of appellant's family and that evening Jay stayed at Jerry's apartment where they remained until about 9:00 a. m. the next morning, May 9, 1967. On May 11, 1967, appellant accompanied by his attorney, voluntarily appeared at the Seattle office of the F. B.I. because he heard the F.B.I. wanted to talk to him. At this time his brother Jay had not been apprehended. In a statement given on that date by appellant to the F.B.I. (Exhibit 3) he stated that about 9:00 a. m. in the morning of May 9, 1967, his brother Jay asked him to pick him (Jay) up at his mother's house at 10:30 a. m. Appellant drove to his mother's house at the appointed time and found Jay waiting for him in his car. At this time Jay got in appellant's car and they drove to Jerry's apartment. In this statement (Exhibit 3) appellant claimed that his brother Jay asked him for a ride to the Greyhound Bus Depot, that he drove him there, they shook hands, and then he (appellant) drove to Tacoma and eventually to Portland. This statement was proved to be false since the evidence shows that the brothers were together in Olympia, Washington, about fifty miles South of Seattle, in the afternoon of May 9, 1967.

The evidence further shows that the appellant moved into his apartment on May 1, 1967, paid a month's rent in advance and moved out some nine days later on May 9, 1967, the day of the robbery, between the hours of 10:00 a. m. and 11:00 a. m. without giving prior notice to his landlady that he was vacating the apartment. He told his landlady on that day that he had been transferred to Spokane and moved out in about forty-five minutes. His landlady testified that someone helped him move his things into the car; that after he left she checked the apartment and found that he had taken all of his clothes except he had not taken his things from the bathroom, such as his razor and toilet articles. Appellant's employer testified that appellant was not transferred to Spokane and that he had failed to show up for work after May 8, 1967.

On May 9, 1967, the day of the robbery, the appellant purchased a total of $1,000 in traveler's checks from four separate banks located between his apartment and Tacoma, Washington, approximately thirty-five miles South of Seattle. It appears that these checks were purchased between the hours of about 11:00 a. m. and 1:00 p. m. on May 9, 1967. Appellant purchased the traveler's checks with cash and did not purchase more than $300 worth from any one bank. The teller at the Seattle Trust and Savings Bank, Riverton Heights Branch, who sold $300 in traveler's checks on May 9, 1967, found a $20.-00 "bait bill" in her cage which she had received on or before May 9, 1967. In the money taken in the robbery by appellant's brother there were some "bait bills", the numbers of which had previously been posted for identification purposes in case of a robbery. The bill found by the teller at the Seattle Trust and Savings Bank was one of these bills. In his statement (Exhibit 3) the appellant stated that his brother Jay gave him about $2,000 in cash from a roll of bills which he (Jay) took from his pocket.

In the early afternoon of May 9, 1967, at Tacoma, Washington, the appellant

bought a 1963 Pontiac automobile from a used car dealer and paid for the same with $1,000 in traveler's checks, which he had purchased, and his 1957 automobile which was in a bad running condition. At the time appellant was alone and made the purchase of the Pontiac in about a minute and a half without haggling over the price and without test driving it. He was told by the seller of the Pontiac that it needed a new clutch and that he would replace it, but appellant stated he was in too much of a hurry. Later that afternoon the appellant, accompanied by his brother, had the Pontiac repaired at a service station in Olympia, Washington. According to the evidence the car was not running properly and needed a tune-up but the appellant and his brother were in too much of a hurry to have the clutch repaired. When appellant's brother, Jay Rux, was arrested by the F.B.I. on May 19, 1967, he had in his possession the receipt for the repair work done by Howard's Union Service Station on appellant's 1963 Pontiac in Olympia, Washington on May 9, 1967.

The appellant claims that the trial court erred in denying his motions to dismiss for lack of evidence; and that the court erred in finding the appellant guilty of Count II beyond a reasonable doubt.

It was incumbent upon the Government to prove three essential elements to establish the offense charged in Count II of the Indictment. It was required to prove first, that Jay Rux committed the bank robbery; second, that appellant had actual knowledge of Jay's participation in the robbery; and third, that with such knowledge appellant in some way assisted Jay in order to hinder or prevent his apprehension, trial or punishment. Hiram v. United States, 354 F.2d 4, 6 (9th Cir.1965).

As stated by this court in Kaplan v. United States, 329 F.2d 561, 563 (1964), the correct test in determining the sufficiency of the evidence is whether "reasonable minds could find that the evidence excludes every hypothesis but that of guilt". It was and is admitted that Jay Rux, the brother of appellant, committed the bank robbery. Although the Government presented no direct evidence as to appellant's knowledge of the robbery, there is an abundance of circumstantial evidence in regard to appellant's activities immediately prior to and after the robbery from which the trial court could and did find that appellant knew his brother Jay robbed the bank at the time he rendered assistance in order to prevent his brother's apprehension, trial or punishment. When appellant went to the F.B.I. on May 11, 1967, he knew the F.B.I. wanted to talk to him. He then knew a federal offense was involved but proceeded to give the false statements hereinabove set forth. "[C]ircumstantial evidence is not considered inferior to direct evidence in any respect. Holland v. United States, 1954, 348 U.S. 121, 75 S.Ct. 127, 99 L.Ed. 150." Kaplan v. United States, supra, at 562; Hiram v. United States, supra, 354 F.2d at 6.

On an appeal from a judgment of conviction the evidence must be viewed in a light most favorable to the Government. Glasser v. United States, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942). Viewing the evidence in this case in such light "reasonable minds could find that the evidence excludes every hypothesis but that of guilt."

After fully considering all the evidence in this case, we believe it to be amply sufficient to prove beyond a reasonable doubt that appellant committed the offense charged in Count II of the Indictment. In deciding this case the trial court was required to consider the evidence as a whole and it clearly appears that the decision was not reached by building an inference on an inference as argued by appellant. It is also urged by appellant that since the court did not find him guilty on Count I it was error to find him guilty on Count II. If the evidence was sufficient to satisfy the trier of the facts beyond a reasonable doubt as to the guilt of appellant on one or both counts of the Indictment, he

could be found guilty of one or both. According to the record the trial court had some doubt in regard to the guilt of appellant as to Count I and accordingly gave him the benefit of that doubt. As shown in the record the trial court did not entertain any doubt in regard to the guilt of the appellant as charged in Count II and neither do we.

The judgment of conviction is affirmed.