**UNITED STATES, Appellee,**

v.

**Gladys BISSONETTE, Appellant.**

**No. 78–1228.**

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 11, 1978.

Decided Nov. 1, 1978.

Anthony E. Crawford of Sieler, Sieler, Trimble & Davis, Rapid City, S.D., for appellant.

Jeffrey L. Viken, Asst. U.S. Atty., Sioux Falls, S.D., for appellee; David V. Vrooman, U.S. Atty., Sioux Falls, S.D., on brief.

Before ROSS and HENLEY, Circuit Judges, and MARKEY, Chief Judge.*

MARKEY, Chief Judge.

Appeal from a jury conviction, in the United States District Court for the District of South Dakota, Western Division, on accessory to assault with a dangerous weapon and concealing a person from arrest charges. We affirm.

### Background

On September 4, 1977, James Eagle, Gladys Bissonette's grandson, shot Calvin Janis. Later that day, Eagle was arrested by tribal authorities with two juveniles, Thomas Allen—Bissonette's son—and Darvin Makes Shine. Allen escaped en route to the tribal jail. On September 5, Allen and Black Smith came to the jail, and Allen, brandishing a rifle, forced the jailer to release Eagle and Makes Shine. After fleeing the jail, Eagle, Allen, Makes Shine, and Black Smith met at Bissonette's house in Pine Ridge and entered.[1] Some time that day, Bissonette was apprised of the facts surrounding the jail break. She told Eagle, Allen, and the others to stay in the basement when she was out of the house, to keep the doors locked, and the blinds drawn. In the following days, she purchased food and cooked for Eagle and Allen, and cashed a check for Eagle.

On September 6, a warrant issued for Eagle's arrest for assault resulting in serious bodily injury; and for Allen's arrest for assault with a deadly weapon, in connection with the jail break. The next day, the United States Parole Commission issued a parole violator warrant for the arrest of Eagle pursuant to 18 U.S.C. § 4213(a)(2). On September 12, the assault warrant for Eagle's arrest was dismissed.

On September 14, Bissonette went to the FBI office in Pine Ridge and asked if there were any federal warrants outstanding against Eagle and Allen. At Bissonette's request, Agent Crouch wrote down that Eagle was wanted for assault resulting in serious bodily injury, and that Allen was wanted for assault with a dangerous weapon. Crouch asked Bissonette if she knew the whereabouts of Eagle or Allen; she replied she did not. The agents testified that at the time of Bissonette's visit, they were unaware the assault warrant for Eagle had been dismissed, and were unsure of the existence of a parole violator warrant, but that they told Bissonette of the parole violator warrant, Crouch explaining that he did not write it down because of his uncertainty. Bissonette denied having been told of the parole warrant.

On September 16, federal and tribal law enforcement officials arrested Allen at Bissonette's house. Bissonette called Allen up from the basement but did not inform the officials of Eagle's presence. On September 30, after Makes Shine informed FBI agents that Eagle had been staying there, they searched Bissonette's house, found Eagle hiding between the attic rafters, and arrested him.[2] Bissonette was indicted three weeks later under 18 U.S.C. § 3 (1948) for assisting Allen (Count I), and under 18 U.S.C. § 1071 (1954) for harboring Eagle (Count II).[3]

---

* The Honorable Howard T. Markey, Chief Judge, United States Court of Customs and Patent Appeals, sitting by designation.

1. Eagle and Allen had made their home with Bissonette. Makes Shine had been staying at Bissonette's house for several months prior to his arrest and escape from jail.

2. At the time of Eagle's arrest, Bissonette was in Rapid City, attending to Allen.

3. § 3. Accessory after the fact
    Whoever, knowing that an offense against the United States has been committed, receives, relieves, comforts or assists the offender in order to hinder or prevent his apprehension, trial or punishment, is an accessory after the fact. . . .

§ 1071. Concealing person from arrest
    Whoever harbors or conceals any person for whose arrest a warrant or process has been issued under the provisions of any law of the United States, so as to prevent his discovery and arrest, after notice or knowledge of the fact that a warrant or process has been issued for the apprehension of such person, shall be fined not more that $1,000 or imprisoned not more than one year, or both; except that if the warrant or process issued

After trial before a jury, Bissonette was convicted on both counts. The imposition of sentence was suspended, and Bissonette placed on unsupervised probation for two years, on the condition that she abide by all federal, state, local and tribal laws.

### Issues

The issues are whether: (I) the evidence was sufficient to support the conviction under 18 U.S.C. § 3, and denial of the motion to dismiss Count I; (II) the evidence was sufficient to support the conviction under 18 U.S.C. § 1071, and denial of the motion to dismiss Count II; and (III) a discussion between the trial court and defense counsel in the presence of the jury, concerning presentation of irrelevant evidence, constituted reversible error.[4]

I. *The evidence was sufficient to support the conviction under 18 U.S.C. § 3, and denial of the motion to dismiss Count I.*

The government had the burden of proving beyond a reasonable doubt that: (1) Allen had committed an assault with a dangerous weapon in violation of 18 U.S.C. §§ 1153 and 113(c); (2) Bissonette had actual knowledge of the assault; and (3) with that knowledge, Bissonette in some way assisted Allen in order to hinder or prevent his apprehension, trial, or punishment. *United States v. Rux,* 412 F.2d 331, 333 (9th Cir. 1969). Bissonette concedes that Allen committed a federal offense, element (1) of the government's burden, and that she gained knowledge of that offense on September 14, 1977.

■ Section 3 requires knowledge that a federal offense has been committed; it does not require knowledge of the fact that a warrant has been issued. Direct evidence is not necessary to prove knowledge of the offense; circumstantial evidence is sufficient. *Id.* at 333. A jury can infer from the evidence presented that the accused had

on a charge of felony, or after conviction of such person of any offense, the punishment shall be a fine of not more than $5,000, or imprisonment for not more than five years, or both.

the requisite knowledge and with that knowledge assisted the offender. *United States v. Norton,* 464 F.2d 85, 86 (5th Cir. 1972). Therefore, with respect to proving elements (2) and (3), the government was not limited to the three days between Bissonette's visit to the FBI office and the arrest of Allen.

■ The record shows sufficient direct and circumstantial evidence from which the jury could have inferred that Bissonette knew of the assault as early as September 5, and that it was a federal offense. A continuing pattern of conduct was established at trial, from which the jury could infer that Bissonette assisted Allen, with the intent to hinder or prevent his apprehension. That Allen made his home with Bissonette prior to the jail break, and that his room was in her basement, does not militate against that inference. Bissonette's conduct did not consist merely of offering Allen the comforts of home; she instructed the fugitives to stay in the basement when she was out of the house, to keep the blinds drawn, and the doors locked; she berated them when they tried to contact friends outside the house, lest their discovery result. Likewise, Bissonette's calling Allen from the basement when law enforcement officials sought his arrest does not negative intent; Bissonette minimized her losses by preventing a search that would have disclosed Eagle's presence.

■ Bissonette attempted at trial to demonstrate that her behavior was motivated by fear and mistrust of law enforcement authorities, concern for the safety of Allen and Eagle, and a desire to retain a lawyer for Allen and Eagle. However, her personal belief that she acted with a "noble purpose" does not negative the existence of the requisite statutory intent; the law does not permit the private luxury of determining if and when federal custody of a fugitive shall commence.

4. Bissonette also alleges that the trial court erred in rejecting her proposed Jury Instruction 8 defining "harbor" and "conceal." We agree with the government that the court's instructions were proper.

■ Bissonette alleges that the correct test for determining the sufficiency of the evidence is whether reasonable minds could find it exclusive of every hypothesis except that of guilty. This court described the proper test in *Durns v. United States,* 562 F.2d 542, 545–46 (8th Cir. 1977), *cert. denied,* 434 U.S. 959, 98 S.Ct. 490, 54 L.Ed.2d 319 (1977):

On appellate review of the sufficiency of the evidence, the court must view the evidence in the light most favorable to the verdict rendered. *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942). It must accept as established any and all reasonable inferences from the evidence that tend to support the jury's verdict. *United States v. Overshon,* 494 F.2d 894, 896 (8th Cir.), *cert. denied,* 419 U.S. 853, 878, 95 S.Ct. 96, 42 L.Ed.2d 85 (1974). The evidence need not "exclude every reasonable hypothesis except that of guilt [; it is enough] that it be sufficient to convince the jury beyond a reasonable doubt that the defendant is guilty." *United States v. Shahane,* 517 F.2d 1173, 1177 (8th Cir.), *cert. denied,* 423 U.S. 893, 96 S.Ct. 191, 46 L.Ed.2d 124 (1975). Furthermore, because circumstantial evidence is intrinsically as probative as direct evidence, *Holland v. United States,* 348 U.S. 121, 140, 75 S.Ct. 127, 99 L.Ed. 150 (1954), the same standard applies where a conviction rests entirely on circumstantial evidence. *United States v. Carlson,* 547 F.2d 1346, 1360 (8th Cir. 1976).

*See also United States v. Nelson,* 419 F.2d 1237, 1242–45 (9th Cir. 1969). The record shows that the evidence was "sufficient to convince the jury beyond a reasonable doubt that the defendant is guilty."

The motion to dismiss Count I, denied after the government rested its case, was based on Bissonette's alleged facilitation and cooperation in the arrest of Allen. The mere act of calling Allen up from her basement, however, does not nullify the affirmative, continuing pattern of conduct establishing Bissonette's intent to prevent Allen's apprehension. The evidence being sufficient to support Bissonette's conviction on Count I, the motion to dismiss that count was properly denied.

II. *The evidence was sufficient to support the conviction under 18 U.S.C. § 1071, and denial of the motion to dismiss Count II.*

The government had the burden of proving beyond a reasonable doubt that Bissonette: (1) had specific knowledge that a federal warrant had issued for Eagle's arrest; (2) harbored or concealed Eagle; and (3) intended to prevent Eagle's discovery and arrest. 18 U.S.C. § 1071.

■ Because the FBI was mistaken respecting which warrant was actually outstanding on September 14, 1977, against Eagle, Bissonette alleges she had no specific knowledge that a federal warrant had been issued. However, the FBI's mistake related to knowledge of the specific charge on which a warrant existed. Section 1071 only requires knowledge that a warrant has issued. Of that fact, Bissonette was fully informed. As the Second Circuit has recognized, rarely would direct proof of knowledge be available. *United States v. Giampa,* 290 F.2d 83, 84 (2d Cir. 1961). The knowledge element can be established by evidence from which the trier of fact "could properly infer knowledge and guilt beyond a reasonable doubt." *Id.* at 84–85. The evidence in this case includes Bissonette's close relationship with Eagle and familiarity with his activities; the conversations between Bissonette, Eagle, and the other fugitives after the jail break; Bissonette's desire to keep Eagle at her house and attempts to keep him out of public view; Makes Shine's testimony that the occupants of Bissonette's house were aware of a federal charge against Eagle; Bissonette's conversation with the FBI agents; and Bissonette's familiarity, through personal experience, with federal law enforcement on the reservation.

The evidence supporting the knowledge element also establishes that Bissonette's conduct throughout constituted the harboring or concealing of Eagle, and intent to

prevent Eagle's discovery and arrest. The intent element is further supported by Bissonette's behavior at the time of Allen's arrest: by calling Allen from the basement, Bissonette forestalled a possible search of the house that would have resulted in Eagle's discovery and arrest.

Contrary to Bissonette's contention, § 1071 does not require a showing of intent "to prevent, for all time, the discovery and arrest" of a fugitive. Bissonette also counters the intent element with the "noble purpose" theory argued respecting Count I. We reject that theory as being no more applicable to Count II than it was to Count I.

The motion to dismiss Count II was based on the FBI's misunderstanding of the charge outstanding against Eagle, Bissonette's alleged resultant lack of specific knowledge, and her lack of intent. The trial court denied the motion after the government rested its case, correctly stating "this is going to be something the jury . . . is going to have to decide . . ." The evidence being sufficient to support Bissonette's conviction on Count II, the motion to dismiss that count was properly denied.

III. *The discussion between the trial court and defense counsel did not constitute reversible error.*

Judge Bogue interrupted the testimony of the sixth defense witness to inform defense counsel that he would allow statements concerning Bissonette's fear of the FBI, but not the reasons for her fear. He explained that the FBI was not on trial, and the accuracy of Bissonette's beliefs was not relevant. During the ensuing exchange with defense counsel, Judge Bogue remarked, "You are going to extend this trial a long time if you are going to continue to ask why [Bissonette fears the FBI]." At proceedings held in chambers, defense counsel moved for a mistrial because "some members of the jury could have received the impression the Court would be blaming the Defense for any delay . . . . Just the tone, the approach, the Court used . . .

placed the Defense in a very negative light . . . . I feel that criticism such as delay . . . could have a deterimental [sic] effect on how the jury views the accused. I would ask, if the Court denies this, at least the Court explain to the jury that . . . it should not be interpreted . . . that the Court is being critical of one side or the other." After further discussion, defense counsel indicated that Judge Bogue's tone was not critical, but normal. Prior to calling the next witness, Judge Bogue, as requested, explained to the jury, "I may have some opinion about whether evidence is admissible and I might suggest that to let in immaterial matters might delay the trial . . . . [T]here is nothing intended as any castigation or criticism of the attorneys involved in this case at all."

Bissonette here alleges prejudicial error because of the apparent criticism of defense counsel for improper tactics, and the proximity of the remark to the beginning of the defense. Bissonette further argues that Judge Bogue's remedial comments heightened and perpetuated the prejudicial effects of the initial remark.

"A trial judge does not become an advocate in litigation by stopping on his own motion . . . an improper line of inquiry." *United States v. Wright,* 542 F.2d 975, 979 (7th Cir. 1976), *cert. denied,* 429 U.S. 1073, 97 S.Ct. 810, 50 L.Ed.2d 790 (1977). Judge Bogue's intervention therefore was not prejudicial. The remark itself, taken in context, was not critical of the defense, and counsel admitted that the tone was normal. The nature of the remark makes its timing irrelevant to the question of prejudice (we note, however, that the defense had already reached its sixth witness), and defense counsel, having requested a remedial explanation of Judge Bogue, cannot now complain because that explanation was made. Reviewing the record as a whole, the criticized remark could not reasonably have contributed to Bissonette's conviction, and did not constitute error.

Finding no error, we affirm the judgment.

Affirmed.