# United States Court of Appeals
### For the Eighth Circuit

_____

No. 12-2625
_____

United States of America

*Plaintiff - Appellee*

v.

Jerilee Jane Head,
True Name Jerilyn Head

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of Minnesota - St. Paul

_____

Submitted: December 14, 2012
Filed: March 1, 2013

_____

Before LOKEN, BRIGHT, and COLLOTON, Circuit Judges.

_____

LOKEN, Circuit Judge.

Donald Clark was involved in a shoot-out on the Red Lake Indian Reservation in Northern Minnesota on November 3, 2010. Julian DeMarrias was killed and two others wounded. On January 15, 2011, FBI Special Agent Robert Mertz and tribal officers found Clark wrapped in a blanket on the floor of a car driven by Clark's girlfriend, Jerilee Head, a member of the Red Lake Band of Chippewa Indians. A

grand jury charged Head with being an accessory after the fact in violation of 18 U.S.C. §§ 3, 1151, and 1153(a) by assisting Clark to avoid apprehension knowing that he had committed an offense against the United States, a murder in Indian country. In November 2011, Clark pleaded guilty to the lesser offense of discharging a firearm during the commission of a crime of violence. In Head's separate criminal case, a superseding accessory-after-the-fact indictment then charged:

> knowing that an offense against the United States had been committed, to-wit: Discharge of a Firearm During the Commission of a Crime of Violence, [Jerilee Jan Head] comforted and assisted an offender, Donald Leigh Clark Jr., in order to hinder and prevent his apprehension, trial and punishment . . . .

A jury convicted Head of this offense following a one-day trial in January 2012. She appeals the conviction, arguing the district court erred by (i) instructing the jury that Clark was guilty of an offense against the United States, (ii) admitting a minute entry from Clark's criminal case reciting that he had pleaded guilty "to Count 6 of the Superseding Indictment" to prove that Clark committed the predicate offense, and (iii) precluding Head from presenting evidence that Clark's action, and her knowledge of his action, included facts that could persuade a jury to find that Clark acted in self-defense. We agree with all three contentions and therefore reverse.

## I.

Head's December 2010 grand jury testimony, read into the record at trial, related the following. On November 3, Head and two others were riding on the Reservation in a car driven by Clark when Head saw Jerrik and Julian DeMarrias drive by in the opposite direction. Head saw Julian waving his arms, an apparent invitation to fight given the "bad blood" between the DeMarrias brothers and Clark. Clark saw the DeMarrias brothers, dropped Head and the other passengers at his brother's house, and drove away. Head then saw the DeMarrias brothers drive by in

the same direction as Clark. Seconds later, she heard gunshots. By the next day, Head knew that the shooting killed one person and wounded two others. She asked Clark what happened. Clark replied that he didn't want to talk about it, was scared, and wanted to turn himself in. About two weeks later, Clark told Head over the telephone, "I killed somebody." He said he was scared to turn himself in and was worried about their son.

Much of Head's grand jury testimony was corroborated by Special Agent Mertz, who testified that Head voluntarily came to the FBI office on November 4 and told him she was not involved in the shooting, did not see the shooting, and heard gunfire shortly after Clark dropped her off. Addressing the accessory charge, Deputy U.S. Marshal Matthew Hedblom testified that, on December 8, he and Special Agent Mertz told Head that a warrant had issued for Clark's arrest and warned she could be charged as an accessory after the fact or with harboring a fugitive if she was hiding him. A tribal officer testified to finding Clark hiding on the floor of Head's car on January 15, after she had attempted to distract the investigating officers.

Near the conclusion of its case in chief against Head, the government sought to admit Clark's plea agreement, his superseding indictment, and a minute entry recording his plea to Count 6 of that indictment as evidence establishing that he committed the predicate offense. When defense counsel would not stipulate that Clark "pled guilty to a particular offense," the district court admitted the one-page minute entry, overruling Head's hearsay and Confrontation Clause objections and explaining that the "plea agreement has got a lot of stuff in there that shouldn't go to this jury." The government then rested. Clark's superseding indictment was not admitted, and the jury was not informed that Count 6 charged him with discharging a firearm during the commission of a crime of violence. The court denied Head's motion for judgment of acquittal, taking judicial notice that Count 6 charged Clark with discharging a firearm during the commission of a crime of violence.

-3-

Before trial began, the district court had issued an Order rejecting Head's request to instruct the jury that Clark was innocent of the underlying crime if he acted in self-defense. "Having pleaded guilty to the crime," the court ruled, "it is now beyond dispute that Clark did *not* act in self-defense." Defense counsel objected to this ruling prior to selection of the jury, arguing that issue preclusion does not apply in criminal cases and therefore Head is "simply not bound by . . . whatever Mr. Clark did in that prior proceeding." The court replied, "Whether she's bound or not, there is no question he is guilty." Defense counsel responded, "There is no question that he pled guilty." "He is guilty," the court concluded, "That ends it. And if he is guilty, there is no self-defense that's involved in it." After the government rested, the court rejected a proffer of testimony by Head and five others intended to establish that, on January 15, the day of her alleged offense, Head reasonably believed that Clark had not committed an offense against the United States because he acted in self-defense. Defense counsel's proffer recited that the other witnesses, including at least one who witnessed the shoot-out, would testify that they discussed Clark's actions in Head's presence before Clark's arrest, and agreed he did not commit a crime because he acted in self-defense. With this evidence foreclosed, the defense rested without calling witnesses. After a short deliberation, the jury convicted Head of being an accessory after the fact to Clark's offense against the United States.

## II.

The statute at issue, 18 U.S.C. § 3, provides in relevant part: "Whoever, knowing that an offense against the United States has been committed . . . assists the offender in order to hinder or prevent his apprehension . . . is an accessory after the fact." To convict Head of the offense charged in the superseding indictment, the government needed to prove beyond a reasonable doubt that (1) Clark discharged a firearm during the commission of a crime of violence; (2) on or about January 15, 2011, Head had actual knowledge that Clark discharged a firearm during the commission of a crime of violence; and (3) with that knowledge, Head assisted Clark

-4-

to prevent his apprehension.  See United States v. Bissonette, 586 F.2d 73, 76 (8th Cir. 1978).  Only the first two elements of the offense are at issue on this appeal.

**A.  A Sixth Amendment Error.**  Regarding the first element of the accessory charge -- that Clark committed the offense against the United States alleged in Head's superseding indictment -- the district court's instruction to the jury reflected its pretrial ruling that Clark's guilty plea established "beyond dispute" that Clark committed the offense and did *not* act in self-defense:

> [T]he crime of being an accessory after the fact, as charged in the Indictment, has what are known as three essential elements and they are as follows:

> One, Donald Leigh Clark, Jr., committed an offense against the United States, namely, the shooting of Julian Keith DeMarrias on November 3, 2010 . . . .

> *   *   *   *   *

> I advise you that Donald Leigh Clark, Jr., has pleaded guilty to shooting Julian Keith DeMarrias on November 3, 2010 and, as such, committed an offense against the United States.

By this instruction, the district court effectively directed a verdict for the government on the first element of Head's accessory offense.  This was error.  The Sixth Amendment provides:  "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury . . . ."  As the Supreme Court emphasized in Sullivan v. Louisiana, 508 U.S. 275, 277 (1993):

> The right includes, of course, as its most important element, the right to have the jury, rather than the judge, reach the requisite finding of "guilty."  Thus, although a judge may direct a verdict for the defendant if the evidence is legally insufficient to establish guilt, he may not direct

a verdict for the State, no matter how overwhelming the evidence. (Citations omitted.)

The government argues that the district court did not violate Head's Sixth Amendment right to trial by jury because the instruction told the jury *it* must find all essential elements of the accessory-after-the-fact offense proved beyond a reasonable doubt, including whether Clark committed an offense against the United States. But this contention ignores the plain import of the second part of the instruction: "I advise you that Donald Leigh Clark, Jr., has . . . committed an offense against the United States." No reasonable juror would construe this directive as anything other than a judicial determination that the government had established the first essential element of the charged accessory offense.[1]

**B. A Second Sixth Amendment Error.** Head argues on appeal that the district court violated her Sixth Amendment Confrontation Clause rights when it admitted the minute entry of Clark's guilty plea as conclusive proof that Clark committed the offense against the United States alleged in Head's superseding indictment. We agree.

In Kirby v. United States, 174 U.S. 47 (1899), the defendant was charged with receiving property that had been stolen by Wallace, Baxter, and King from a United

---

[1]That the district court took judicial notice of Clark's guilty plea did not justify its determination that Clark in fact committed that offense against the United States. See Holloway v. Lockhart, 813 F.2d 874, 878-79 (8th Cir. 1987). Nor could the court have applied issue preclusion (collateral estoppel) against Head, who was not a party to Clark's criminal prosecution. In United States v. Arnett, 353 F.3d 765, 766 (9th Cir. 2003), cert. denied, 541 U.S. 1091 (2004), the government conceded to the Ninth Circuit sitting en banc that, "[i]n federal criminal trials, the United States may not use collateral estoppel to establish, as a matter of law, an element of an offense or to conclusively rebut an affirmative defense on which the Government bears the burden of proof beyond a reasonable doubt."

States post office.  The governing statute provided that a judgment of conviction against the principal felon "shall be conclusive evidence in the prosecution against such receiver that the property of the United States therein described" was stolen.  Id. at 48. Consistent with this statute, records of felony theft convictions against Wallace and Baxter, based on guilty pleas, and against King, based on a jury verdict, were admitted in Kirby's trial to prove an element of his offense, that he received stolen property.  The Supreme Court reversed Kirby's conviction, holding that the statute "is in violation of the clause of the Constitution of the United Stats declaring that in all criminal prosecutions the accused shall be confronted with the witnesses against him."  Id. at 61.  The Court explained:

> Where the statute makes the conviction of the principal thief a condition precedent to the . . . punishment of a receiver of the stolen property, the record of the trial of the former would be evidence in the prosecution against the receiver to show that the principal felon had been convicted; for a fact of that nature could only be established by a record.  The record of the conviction of the principals could not however be used to establish, against the alleged receiver . . . the essential fact that the property alleged to have been feloniously received by him was actually stolen from the United States. . . .  And yet the court below instructed the jury that the conviction of the principal felons upon an indictment against them alone was sufficient *prima facie* to show, as against Kirby . . . that the property was stolen -- a fact which . . . the United States was bound to establish beyond a reasonable doubt in order to obtain a verdict of guilty against him. . . .  We cannot assent to this view.

Id. at 54-56.  The decision in Kirby is controlling here.   Head was indicted for a distinct accessory offense.  One element of that offense was that Clark *committed* an offense against the United States, not that he was *convicted* of an offense.  The minute entry recited that, in a separate prosecution, Clark pleaded guilty to the predicate offense alleged in Head's indictment.  As we said in Barone v. United States, 205 F.2d 909, 914 (1953), a defendant charged with being an accessory after the fact "was

entitled to be confronted with the witnesses and the principal crime could not have been proven by the introduction of the judgment of conviction."

Here, Head was not a party to Clark's criminal prosecution. She had no opportunity to confront and cross-examine this government "witness" -- a document that, by the district court's ruling, conclusively established the first element of the government's case. Clark was initially charged with first and second degree murder. Facing harsh penalties if convicted of those crimes, he may have pleaded guilty to the less serious offense of discharging a firearm during the commission of a crime of violence, even if he believed he had a good chance of establishing at trial that he did not commit a crime of violence because he acted in self-defense. Head's Sixth Amendment Confrontation Clause rights were violated when she was foreclosed from pursuing such issues by the admission of a minute entry reciting a testimonial admission by Clark that Head had no opportunity to confront and cross examine. Cf. United States v. Gallardo-Mendez, 150 F.3d 1240, 1245 (10th Cir. 1998) ("the 'factual basis' requirement in the context of accepting a guilty plea . . . is a lower standard than the 'beyond a reasonable doubt' standard required to satisfy the due process requirements of a criminal trial").

This conclusion is confirmed by our recent decision in United States v. Causevic, 636 F.3d 998 (8th Cir. 2011). Applying Crawford v. Washington, 541 U.S. 36 (2004), we held that the Confrontation Clause was violated when a foreign judgment of conviction was admitted as substantive evidence that the defendant committed the murder in question and therefore his subsequent contrary statements to immigration authorities violated 18 U.S.C. § 1001(a)(2). Citing Kirby, we concluded that, while a record of conviction is not testimonial if offered to prove the fact of conviction, it is testimonial if offered as "proof of facts underlying the crime charged." Causevic, 636 F.3d at 1004. Here, Clark's minute entry was offered to prove that he committed the underlying crime, not simply that he was convicted of that crime. Urging us to disregard "dicta" in Causevic, the government argues the

minute entry was a non-testimonial public record, admissible because it was "created for administration of an entity's affairs and not for the purpose of establishing or proving some fact at trial," quoting Melendez-Diaz v. Massachusetts, 557 U.S. 305, 324 (2009). This contention improperly ignores the Supreme Court's inclusion of "prior testimony that the defendant was unable to cross-examine" in its list of a "core class of 'testimonial' statements" in Crawford, 541 U.S. at 51. Clark's guilty plea was a form of prior in-court testimony.

The government also argues that evidence of Clark's plea was admissible because it was relevant to whether Clark committed the predicate offense charged in Head's accessory indictment. We agree that Clark's plea of guilty was evidence relevant to whether he committed the offense against the United States charged in Head's superseding indictment. But that does not give the government license to ignore the Confrontation Clause. Rather, "the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination," or production of the declarant for cross-examination at the subsequent trial. Id. at 68, quoted in Michigan v. Bryant, 131 S. Ct. 1143, 1153 (2011).

**C. The Self-Defense Errors.** Head argues the district court erred in excluding evidence that was relevant to the first two elements of the alleged accessory-after-the-fact offense because it tended to show (i) that Clark did not commit the alleged offense against the United States because he acted in self-defense, and (ii) that Head did not have actual knowledge Clark committed the predicate offense when she assisted him in evading apprehension on January 15 because she reasonably believed Clark had acted in self-defense. The district court excluded evidence that Clark acted in self-defense because Clark pleaded guilty and therefore, "He is guilty. That ends it. And if he is guilty, there is no self-defense that's involved in it." The court excluded evidence that Head believed Clark acted in self-defense, agreeing with the government that Head's subjective belief was irrelevant because self-defense is an affirmative defense, and the government need only prove that a defendant charged

-9-

with being an accessory after the fact knew about the conduct underlying the crime, not that the conduct constituted a crime against the United States. Accordingly, as to the second element, the court instructed the jury the government need only prove Head "knew that Clark had committed the shooting." We disagree with these rulings.

As to the first element, the government concedes that, if Clark in fact acted in self-defense, he did not commit the predicate offense of discharging a firearm during the commission of a crime of violence. See generally 2 LaFave, Substantive Criminal Law § 10.4 (2d ed. 2003). "Self-defense is an affirmative defense on which the defendant bears the burden of production. In a federal prosecution, however, once the defendant has met the burden of production, the government must satisfy the burden of persuasion and must negate self-defense beyond a reasonable doubt." United States v. Scout, 112 F.3d 955, 960 (8th Cir. 1997) (quotation omitted). Thus, if Head had come forward with some evidence that Clark acted in self-defense -- for example, by cross-examining Clark if the government called him as a witness to establish his guilty plea, or by calling an eye-witness to the shoot-out as a defense witness -- the jury should be instructed that the government must establish the absence of self-defense beyond a reasonable doubt to prove the first element of Head's accessory offense. It was reversible error to deprive Head of any opportunity to prove that Clark did not commit the predicate offense because he acted in self-defense.

Regarding the second element of the accessory offense, "at the very least, an accessory after the fact must be aware of conduct on the part of the offender that satisfies the essential elements of a particular offense against the United States," "though not necessarily that such conduct constitutes a federal offense." United States v. Graves, 143 F.3d 1185, 1186, 1190 (9th Cir. 1998); see Bissonette, 586 F.2d at 76. Head's knowledge that Clark committed an offense against the United States could be established through circumstantial evidence. See United States v. Guel, 184 F.3d 918, 922 (8th Cir. 1999). But the government had to prove Head knew that

-10-

Clark had discharged a firearm during the commission of a crime of violence *at the time she was charged* with assisting him in evading apprehension, January 15, 2011, more than two months after the shoot-out. See United States v. Tucker, 533 F.3d 711, 714 (8th Cir. 2008). Yet the government successfully objected to evidence from third party witnesses concerning what Head learned prior to January 15 about an alleged crime she did not personally observe on November 3. Had that evidence been admitted, and if it persuaded the jury that the facts known to Head established that Clark acted in self-defense, then the government would fail to prove the second element of the alleged accessory offense -- that Head *knew* on January 15 that Clark had discharged a firearm during the commission of a *crime* of violence.[2]

Thus, it was error to exclude proffered evidence tending to prove that Head knew Clark acted in self-defense. This leads to an important question, the appropriate disposition of Head's appeal. If this was "trial error," the government gets an opportunity to correct the error at a new trial. But if the error resulted in legally insufficient evidence to convict, Head is entitled to a judgment of acquittal. See Burks v. United States, 437 U.S. 1, 15-16 (1978). Though the question is not free from doubt, we conclude that, by successfully blocking evidence of what Head knew on January 15, 2011, the government failed to prove, indeed, insisted it need not prove, the second element of an accessory-after-the-fact offense. In these circumstances, a judgment of acquittal is required.

---

[2]In Martin v. Ohio, 480 U.S. 233, 236 (1987), the Supreme Court noted that the Due Process Clause as construed in In re Winship, 397 U.S. 358, 364 (1970), requires that jury instructions regarding the affirmative defense of self-defense must "convey to the jury that all of the evidence, including the evidence going to self-defense, must be considered in deciding whether there was a reasonable doubt about the sufficiency of the State's proof . . . ." Id. at 234. Here, the district court's instruction that the second element was satisfied by proof "that the Defendant knew that Clark had committed the shooting" fell short of this mandate.

The government protests that we should not "render the statute unenforceable" by allowing self-defense to be interposed as a defense to either element of an accessory-after-the-fact charge. But if this quantum of proof is a problem, it is one of the government's own making. Deputy Marshal Hedblom's testimony established that Head could have been charged and convicted of harboring a fugitive on January 15 in violation of 18 U.S.C. § 1071; that statute requires proof that Head "had specific knowledge that a federal warrant had issued for [Clark's] arrest," but not proof of the commission of a predicate offense. Bissonette, 586 F.2d at 77. The maximum sentence for a violation of § 1071 is five years in prison, whereas an accessory after the fact may be sentenced under § 3 to one-half the maximum term of the principal offender. When Head was first indicted, Clark had been charged with first degree murder, for which he could have been sentenced to life in prison. See 18 U.S.C. § 1111(b). When Clark was allowed to plead to the lesser offense of discharging a firearm during the commission of a crime of violence, manslaughter, the government could have sought a superseding indictment charging Head with the lesser offense of violating § 1071. But it elected to assume the burden of proving the greater offense of accessory after the fact. Allowing a plea of manslaughter when a person accused of murder has an "imperfect" defense of self-defense is a not uncommon exercise of prosecutorial discretion. See 2 LaFave at § 10.4(i). Thus, the government should have expected to face a serious self-defense issue when it declined to grant Head comparable leniency.

The judgment of the district court is reversed and the case is remanded with directions to enter a judgment of acquittal.

COLLOTON, Circuit Judge, concurring in part and dissenting in part.

I agree that the district court erred by excluding evidence proffered by Jerilee Jane Head that was relevant to the second element of the charged accessory-after-the-fact offense—i.e., whether she knew that Donald Clark committed the predicate

-12-

offense of discharging a firearm during the commission of a crime of violence when she assisted him in evading apprehension. But this was a trial error that does not preclude a retrial of Head, and the court errs by directing a judgment of acquittal. I would reverse and remand for further proceedings, including a new trial if the United States Attorney elects to proceed.

Since the nineteenth century, it has been settled that the Double Jeopardy Clause's general prohibition against successive prosecutions does not prevent the government from retrying a defendant who succeeds in getting her first conviction set aside on direct appeal because of some error in the proceedings that led to the conviction. *Lockhart v. Nelson*, 488 U.S. 33, 38 (1988); *United States v. Ball*, 163 U.S. 662, 671-72 (1896); *see also United States v. Tateo*, 377 U.S. 463, 465 (1964) (applying the same rule when a conviction was vacated on collateral attack). "This rule, which is a well-established part of our constitutional jurisprudence, is necessary in order to ensure the sound administration of justice." *Nelson*, 488 U.S. at 38 (internal quotation omitted).

> Corresponding to the right of an accused to be given a fair trial is the societal interest in punishing one whose guilt is clear after he has obtained such a trial. It would be a high price indeed for society to pay were every accused granted immunity from punishment because of any defect sufficient to constitute reversible error in the proceedings leading to conviction.

*Tateo*, 377 U.S. at 466.

For a time, this rule extended even to reversals based on insufficiency of the evidence, *Bryan v. United States*, 338 U.S. 552 (1950), but the Supreme Court recognized an "exception" to the general rule in *Burks v. United States*, 437 U.S. 1 (1978). *See Nelson*, 488 U.S. at 39. In *Burks*, the Court held that "when a defendant's conviction is reversed by an appellate court *on the sole ground* that the

-13-

evidence was insufficient to sustain the jury's verdict, the Double Jeopardy Clause bars a retrial on the same charge." *Nelson*, 488 U.S. at 39 (emphasis added). *Burks*, however, had "no doubt" that the *Ball* decision of 1896 "was correct in allowing a new trial to rectify *trial error*." 437 U.S. at 14. And the Court in *Burks* even listed examples of "trial error" that do not preclude a retrial after an appellate reversal: "*incorrect receipt or rejection of evidence*, incorrect instructions, or prosecutorial misconduct." 437 U.S. at 15 (emphasis added).

*Lockhart v. Nelson* reiterated that an appellate reversal for a trial error does not preclude a retrial. There, evidence was erroneously admitted against the defendant at trial, and without the inadmissible evidence, there was insufficient evidence in the record to sustain the conviction. Nonetheless, reversing the Eighth Circuit, the Supreme Court thought it "beyond dispute that this is a situation described in *Burks* as reversal for 'trial error.'" 488 U.S. at 40. Retrial was allowed, because after considering "all of the evidence admitted by the trial court," including that which was later declared inadmissible, there was sufficient evidence to sustain the conviction. *Id*. at 41. The Court's holding "merely recreate[d] the situation that would have been obtained" if the trial court had made the correct evidentiary ruling during the original proceeding. *Id*. at 42.

The error on which the court in this case relies in directing a judgment of acquittal for Head is a classic "trial error" as defined in *Burks*: "incorrect receipt or rejection of evidence." 437 U.S. at 15. The district court incorrectly rejected evidence that Head proffered in her defense. The "sole ground" for this court's reversal of the conviction is *not* insufficiency of the evidence; the reversal is based on evidentiary trial error.

On the record presented at trial, there was sufficient evidence for a jury to conclude that Head knew that Clark had committed the predicate offense, and the court does not really contend otherwise. The government introduced Head's grand

-14-

jury testimony of December 20, 2010, in which she admitted that she knew someone died in "the shooting" on the reservation on November 3, 2010, and that Clark told her on November 4 that he had "killed somebody" and was "scared to turn himself in." Before the incident, Head acknowledged that she was riding with Clark when the eventual shooting victim drove by and waved his arms as though he was calling Clark to fight. Clark promptly dropped off Head and "blazed off" in his car. Shortly thereafter, she saw the eventual victim drive by in the same direction as Clark, and then she heard gunshots.

Head also admitted to a law enforcement officer in March 2011 that between the date of the shooting in November and Clark's apprehension in January 2011, "everybody on the reservation kn[ew] that law enforcement [wa]s looking for" Clark, and that Clark was staying primarily with his family, Head, or Head's brother during that period. Although a law enforcement officer advised Head about the elements of the accessory offense on December 8, 2010, she never told the officer that she believed that Clark was innocent. On January 15, officers found Clark hiding in the backseat of Head's car after she denied knowing where Clark could be found.

From this evidence, a reasonable jury could infer that Head knew in November and December that Clark had committed the predicate offense, and that she continued to know the same on January 15, when she assisted Clark to evade apprehension. The self-defense evidence excluded by the district court might have weakened the government's case, if the jury believed that Head's knowledge changed over time, but that possibility has no bearing on whether the evidence *as received at trial* was sufficient to convict.

That the government is allowed to retry Head on remand follows *a fortiori* from *Nelson*. In *Nelson*, after adjusting the trial record on appeal to account for the evidentiary error, there was insufficient evidence to sustain the conviction. But retrial was still allowed, because there was sufficient evidence in the record actually

-15-

received in the trial court.  Here, after adjusting the trial record on appeal to account for the evidentiary error relating to self-defense, there is *still* sufficient evidence to sustain the conviction, for the jury could have disbelieved Head's evidence entirely. Like the incorrect receipt of evidence at issue in *Nelson*, the incorrect rejection of evidence is a trial error that does not preclude a retrial.  *Detrich v. United States*, 924 F.2d 479, 479-80 (2d Cir. 1991) (per curiam).

For these reasons, I would reverse the conviction and remand for further proceedings, including the possibility of a new trial.

_____